Jeffrey S. CHASE, M.D.

v.

Jerome H. CHECK, et al.

Kosrow NOWROOZI

v.

Dr. Jerome CHECK, et al.

Civ. A. Nos. 94–3928, 94–3652.

United States District Court,
E.D. Pennsylvania.

Oct. 18, 1994.

privilege in general, and not surveillance materials.

G. Alexander Bochetto, Koji F. Fukumura, Bochetto and Lentz, P.C., Philadelphia, PA, for Jeffrey S. Chase, M.D.

Tom P. Monteverde, Monteverde & Hemphill, Philadelphia, PA, for Jerome H. Check, M.D., Deena Check, Old World Antiques.

Jack M. Bernard, Vincent A. Vietti, James F. Wiley, Robert A. Cohen, Margolis, Edelstein and Scherlis, Philadelphia, PA, for Larry Scott Auerbach.

Sol H. Weiss, Anapol, Schwartz, Weiss & Schwartz, P.C., Philadelphia, PA, for Cienne Management Services, Ltd., South Jersey Center for Pelvic Sonography, P.C., The Cooper Institute for In Vitro Fertilization, P.C., Cooper Center for Reproductive Endocrinology, P.C.

David L. Braverman, Fellheimer Eichen & Braverman, P.C., Philadelphia, PA, for Kosrow Nowroozi.

## MEMORANDUM

DALZELL, District Judge.

These two actions stem from the bitter breakup of a medical practice located in Pennsylvania and New Jersey. The actions having been consolidated for all pretrial purposes pursuant to Local Rule of Civil Procedure 3(c)(2), we here address an issue common to both actions, namely, to what extent may a plaintiff who has executed an arbitration agreement with some, but not all, of the defendants be compelled to arbitrate those claims against non-signatory defendants?

*Factual background*

Drs. Jerome H. Check, Jeffrey S. Chase, Kosrow Nowroozi and Ahmad Nazari were all partners in a medical practice which specialized in infertility, gynecology, and medical endocrinology. *See, e.g.,* Nowroozi First Amended Complaint at ¶¶ 33–34. The medical practice was conducted through eleven separate entities: four Pennsylvania corporations (Reproductive and Medical Endocrine Associates, P.C. ("Reproductive"), Pelvic Ultrasounds, P.C. ("Pelvic"), Endocrine Histology Associates, P.C. ("Histology"), and Endocrine Testing Ltd., P.C. ("Endocrine")); four New Jersey corporations (Cooper Center for Reproductive Endocrinology, P.C., South Jersey Center for Pelvic Sonography, P.C., Cooper Institute for In Vitro Fertilization, P.C., Cienne Management Services, Ltd.), and three Pennsylvania real estate partnerships (the Stratford House Partnership, the Ansley Manor Partnership, and the Old York Manor Partnership). Nowroozi First Amended Complaint at ¶¶ 9–21, 27, 28; Chase Complaint at ¶ 10. The eight corpora-

tions constituted the vehicle for providing services to the patients of the medical practice, while the partnerships owned real estate upon which the Pennsylvania corporations' medical offices were located and at which the other corporate entities were housed to perform medical tests and laboratory work, and to render other medical services to patients. *See, e.g.,* Nowroozi First Amended Complaint at ¶¶ 28, 38.

Eventually, the doctors began to disagree about the management of the medical practice, and Drs. Chase and Nowroozi blamed Dr. Check, and others, for mismanaging the practice:

> Almost from inception, disputes developed among the parties as to the operation of the Medical Practice. Dr. Check operated the medical practice as his personal fiefdom and refused to inform the other doctors in the practice about the details of the Medical Practice's finances, business decisions or patient care.

Nowroozi First Amended Complaint at ¶ 38.

Dr. Nowroozi brought his action first. On June 13, 1994, Dr. Nowroozi filed his complaint naming as defendants Dr. Jerome Check and his wife, Deena Check, Larry Auerbach and his wife, Cindy Auerbach, the four Pennsylvania corporations, the four New Jersey corporations, the three Pennsylvania real estate partnerships, and "Old World Antiques" (which is merely a fictitious name by which Dr. Check sometimes purchased antiques). In response to the Auerbach's motion to dismiss for failure to join indispensable parties, Dr. Nowroozi filed an amended complaint which named as additional defendants Dr. Chase, Harriet G. Adelson, Sol H. Weiss, Wayne Liss, and Joanne Liss. Dr. Nowroozi has asserted one federal RICO claim, 18 U.S.C. § 1961 *et seq.,* and eight state law claims pursuant to this Court's supplemental jurisdiction codified at 28 U.S.C. § 1367(a).

Dr. Chase brought his action on June 24, 1994, naming as defendants Dr. Check and his wife, Deena Check, Larry Auerbach and his wife, Cindy Auerbach, the four New Jersey corporations, and Old World Antiques. Dr. Chase has also asserted one federal RICO claim, 18 U.S.C. § 1961 *et seq.,* and ten

state law claims pursuant to 28 U.S.C. § 1367(a).

All four of the Pennsylvania corporations were subject to nearly identical stock purchase agreements and shareholders' agreements, all executed by Dr. Nowroozi, Dr. Chase, Dr. Check, and a fourth partner who is not a party to this action, Dr. Nazari. Each Stock Purchase Agreement of each Pennsylvania corporation contains an arbitration clause that provides:

> 11.5. *ARBITRATION.*
>
> A. Any claim or controversy arising out of or relating to this Agreement or any breach thereof or concerning the operation or management of the Corporation, its Articles of Incorporation or By–Laws, shall be settled by Arbitration under the Pennsylvania Arbitration Act of 1980. Each party shall select an arbitrator. The two arbitrators shall select a third arbitrator. In the event the two arbitrators are unable to agree upon a third arbitrator within thirty (30) days, either may request that selection be made by a Judge of the Court of Common Pleas of Philadelphia County. Each party shall bear the expenses it incurs and the expenses of the third arbitrator shall be borne equally.
>
> Arbitration shall take place in Philadelphia, Pennsylvania, and shall be governed in accordance with Pennsylvania procedure and evidentiary laws. A decision agreed to by two of the arbitrators shall be binding and final. Judgment on the award may be entered by any Court having competent jurisdiction thereof.

Stock Purchase Agreements, Section 11.5.

Section 19 of the Shareholders' Agreements for Reproductive, Pelvic and Histology, and Section 16 of the Shareholders' Agreement for Endocrine, again all signed by Drs. Chase, Nowroozi, and Check, contain identical language to section 11.5 of the Stock Purchase Agreement.

Each doctor also had an employment contract, in all material respects identical to one another, with three of the Pennsylvania corporations that set forth the terms and conditions of each doctor's employment. All employment agreements between each of the

physicians and Reproductive, Pelvic and Histology (there apparently are no employment agreements with Endocrine) contain an arbitration clause that provides:

23. *ARBITRATION*

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of judicate and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Employment Agreements, Section 23.

Drs. Chase, Check and Nowroozi also were partners in the Ansley Manor Partnership. The partnership agreement that governs this relationship contains an arbitration clause that provides:

*ARTICLE XX*

*ARBITRATION*

20.1 *SELECTION OF ARBITRATORS*
Any claim or controversy arising out of or relating to this Agreement or any breach thereof or concerning the operation or management of the Partnership shall be settled by Arbitration under the Pennsylvania Arbitration Act of 1981. Each party shall select an arbitrator. The two arbitrators shall select a third arbitrator. In the event the two arbitrators are unable to agree upon a third arbitrator within thirty (30) days, either may request that selection be made by a Judge of the Court of Common Pleas of Philadelphia County. Each party shall bear the expenses it incurs and the expenses of the third arbitrator shall be borne equally.

Arbitration shall take place in Philadelphia, Pennsylvania, and shall be governed in accordance with Pennsylvania procedure and evidentiary laws. A decision agreed to by two of the arbitrators shall be binding and final. Judgment on the award may be entered by any Court having competent jurisdiction thereof.

Ansley Manor Partnership Agreement, Section 20.1.

Finally, Drs. Chase, Check and Nowroozi, and Cindy Auerbach were, among others, all partners in the Stratford House Partnership and the Old York Manor Partnership. The partnership agreements that govern these relationships contain arbitration clauses that provide:

*ARTICLE XX*

*ARBITRATION*

20.1 *SELECTION OF ARBITRATORS*
Any claim or controversy arising out of or relating to this Agreement or any breach thereof or concerning the operation or management of the Partnership shall be settled by Arbitration under the Rule of Judicate.

Arbitration shall take place in Philadelphia, Pennsylvania, and shall be governed in accordance with Pennsylvania procedure and evidentiary laws. Judgment on the award may be entered by any Court having competent jurisdiction thereof.

Stratford House Partnership and the Old York Manor Partnership Agreements, Section 20.1.

Thus, the doctors' medical practice was governed by a variety of agreements that each contained some form of arbitration clause.[1]

---

1. There appear to be no parallel stock purchase or shareholders' agreements for the New Jersey corporations. Based upon the extensive pleadings and briefing submitted in connection with the pending motions, it is difficult to imagine what issues could exist that would be peculiar to those corporations. Indeed, Dr. Nowroozi in his amended complaint lumps all of these entities together with his generic use of "Medical Practice" (*see, e.g.,* ¶ 127 of his amended complaint). For example, Count VI of Dr. Nowroozi's amended complaint asserts that Dr. Check breached his fiduciary duty as Chief Operating Officer of the "Medical Practice", presumably the Pennsylvania and New Jersey corporations, as well as in his capacity as a partner in the Pennsylvania real estate partnerships. To the extent any breach of fiduciary claim as to the New Jersey corporations involves conduct not related to actions involving the Pennsylvania corporations and real estate partnerships, obvious interests of economy for both the parties and the Court counsel that we should stay our hand in order for such claims to be identified, isolated, and preserved in the arbitrations that will take place.

*Discussion*

■ The United States Supreme Court has recognized the "strong national policy favoring the enforcement of arbitration agreements." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 224, 107 S.Ct. 2332, 2336, 96 L.Ed.2d 185 (1987) (citation omitted). In addition, it is well-settled that a RICO claim, if within the ambit of an arbitration clause, is as subject to arbitration as any other claim, *id.*

The claims in these actions are the stuff of a garden-variety business dispute, and while we entertain doubts as to whether plaintiffs have sufficiently pled a pattern of racketeering to satisfy RICO,[2] we need not resolve those doubts here because of the ubiquity of the arbitration agreements between plaintiffs and their putative antagonists.

All claims between either Dr. Nowroozi or Dr. Chase and Dr. Check are arbitrable. Quite simply, these consolidated actions center around the breakup of the medical practice. The agreements for eight of the eleven entities that comprised the medical practice contain very broad arbitration clauses, *see supra.* All three physicians signed those agreements that provided, very clearly and in the broadest possible terms, that all disputes would be submitted to arbitration. Doctors Chase and Nowroozi must now abide by their agreements.[3]

The only remaining issue we need address is to what extent a plaintiff who has executed an arbitration agreement with some, but not all, of the defendants may be compelled to arbitrate those claims against the defendants who are not parties to the arbitration agreement. Under the authority of *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110 (3d Cir.1993), we believe that all of the claims in both actions can be stayed pending arbitration.

In *Pritzker,* the trustees of a pension plan brought an action against their brokerage firm, one of its financial consultants, and a sister corporation for various ERISA violations, *id.* at 1112. Although the plaintiffs had an arbitration agreement with the brokerage firm only, our Court of Appeals also compelled arbitration of the claims against the employee and the sister corporation as well, despite their absence as signatories to the arbitration agreement, *id.* at 1122. The Court of Appeals reasoned that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Id.* at 1121.

As another Circuit has held, a rule like *Pritzker*'s makes sense because if plaintiffs "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990) (brackets and citation omitted). In *Arnold, supra,* the Court of Appeals for the Sixth Circuit held that the officers of a corporation were "entitled to arbitration as agents of the signatory defendant" even though they had not signed an arbitration agreement with the plaintiff, *id.* at 1281.

Similarly, in *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986), the court held that a broker's employees, who were not parties to an arbitration agreement between the broker and the investor, were entitled to submit the dispute to arbitration nonetheless, *id.* at 1187. The Ninth Circuit in *Letizia* noted that:

> Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. *See, e.g., Barrowclough v. Kidder, Peabody*

---

**2.** At least some of the difficult RICO questions present here will be addressed by our Court of Appeals in a case argued this day to the Court *en banc, Tabas v. Tabas,* Nos. 92–1495, 92–1529, 1994 WL 158772, 1994 U.S.App. LEXIS 9355 (3d Cir. May 2, 1994), *vacated, reh'g en banc granted,* (3d Cir. May 25, 1994).

**3.** We pause to note that both complaints name Old World Antiques as a defendant. To the extent that Old World Antiques is merely a fictitious name by which Dr. Check sometimes purchased antiques (Chase Complaint at ¶ 28; Nowroozi First Amended Complaint at ¶ 32), the claims against it are treated identically to the claims against Dr. Check.

& Co., 752 F.2d 923, 938 (3d Cir.1985); *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 795–96 (7th Cir.1981); *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *cf. Alyeska Pipeline Serv. Co. v. International Bhd. of Teamsters*, 557 F.2d 1263, 1267 (9th Cir.1977). *Id.* at 1187–88.

These precedents govern our decision in these actions. Of the various individual defendants in both actions, we believe all of them are agents of the Pennsylvania corporations and partnerships and thus their disputes are subject to arbitration in accordance with the arbitration agreements that cover those entities [4].

■ Both plaintiffs name Larry Auerbach as a defendant. Dr. Nowroozi stated that "[a]t all times relevant hereto, Mr. [Larry] Auerbach acted in various capacities to the Medical Practice including, *inter alia*, as business manager, lawyer and accountant." Nowroozi First Amended Complaint at ¶ 59. Dr. Chase stated that "Auerbach came to work for defendant Check and the various medical entities as 'Business Manager,' 'Chief Operating Officer,' 'lawyer,' 'accountant,' and 'confidant,' ..." Chase Complaint at ¶ 13. Certainly, by occupying all these formal and informal positions, Auerbach was necessarily an agent of the medical practice. As such, "the decision is quite straightforward. Under traditional agency theory, [Larry Auerbach] is subject to contractual provisions to which [the medical practice] is bound." *Pritzker*, 7 F.3d at 1121 (citation omitted).

■ Cindy Auerbach and Deena Check, too, were named as defendants in both actions. Again, we need only look at the complaints to find agency relationships. "On information and belief, Mrs. Auerbach was, at certain times relevant hereto, a clerical employee and/or agent of the Corporations." Nowroozi First Amended Complaint at ¶ 30. "Cindy [Auerbach] ... also came to work for the various corporate entities as the 'billing manager.'" Chase Complaint at ¶ 13. "On information and belief, Mrs. Check was, at certain times relevant hereto, an employee and/or authorized agent of the Corporations." Nowroozi First Amended Complaint at ¶ 31. Just as in *Pritzker*, where our Court of Appeals held that the financial consultant was entitled to arbitrate the claims against her because she was an agent of the brokerage firm that had an arbitration agreement, *id.* at 1121, so here Cindy Auerbach and Deena Check may arbitrate the claims against them because they are agents of the various medical practice entities.

Finally, we note that although Dr. Nowroozi's amended complaint names five more individuals as "additional defendants" in the caption, none of the Counts of his amended complaint names any of these individuals, so we need not consider their status.

For the foregoing reasons, being "satisfied" that the matters at issue are "referable to arbitration", 9 U.S.C. § 3, we shall grant defendants' motions for a stay pending arbitration of all claims. All other motions will be denied as moot. Appropriate Orders for each action follow.[5]

4. In his response to the Check defendants' motion for a stay pending arbitration, Dr. Chase argues that arbitration cannot be enforced because he is not bringing his action against the Pennsylvania corporations and partnerships, but against individual defendants. Response to the motion for a stay, at 5. He seems to argue that only a dispute between the corporation and an individual doctor must be arbitrated. Dr. Chase misses the point. We believe the proper and common sense interpretation of the broadly-worded arbitration clause is that any dispute between any parties to the clause, including between any two doctors who signed the agreement, shall be arbitrated. The clause provides that "[a]ny claim or controversy ... concerning the management of the Corporation ... shall be

settled by Arbitration ..." Stock Purchase Agreements, Section 11.5; Shareholders' Agreements for Reproductive, Pelvic and Histology, Section 19 and Shareholders' Agreement for Endocrine, Section 16. A corporation cannot "manage" itself, and thus any "claim or controversy ... concerning the management" of a corporation invariably and necessarily involves a dispute between at least two natural persons, the officer allegedly mismanaging and the complainant.

5. Recognizing that we are not presented with an action contemplated under 9 U.S.C. § 4, and given the Congressional view that a stay in the context presented here is "interlocutory", 9 U.S.C. § 16(b)(1), we do not believe we can do

## ORDER

AND NOW, this 18th day of October, 1994, upon consideration of the Check defendants' motion for a stay pending arbitration and the Auerbach defendants' motion to dismiss the complaint, and the opposition thereto, and in accordance with the accompanying Memorandum, and in addition thereto finding that:

(a) Dr. Nowroozi filed an amended complaint naming as defendants Dr. Jerome Check and his wife, Deena Check, Larry Auerbach and his wife, Cindy Auerbach, the four Pennsylvania corporations, the four New Jersey corporations, the three Pennsylvania real estate partnerships, Old World Antiques, Dr. Chase, Harriet G. Adelson, Sol H. Weiss, Wayne Liss, and Joanne Liss;

(b) On July 11, 1994, the Check defendants[1] filed a motion for a stay of all claims pending arbitration;

(c) In his opposition to this motion for a stay, plaintiff admitted that the claims in Counts II, III, IV, and V are arbitrable and thus no further discussion is required on these Counts and those claims will be stayed in this Court pending arbitration in accordance with the appropriate provisions;

(d) Additionally, Dr. Nowroozi failed to discuss whether he regards the claim in Count IX as arbitrable;

(e) Finally, Dr. Nowroozi argues that the claims in Counts I, VI, VII, and VIII are not arbitrable and therefore has urged that defendants' motion be denied with respect to these claims;

(f) Count I in plaintiff's amended complaint is a RICO claim asserted against Dr. Jerome Check, Deena Check, Larry Auerbach, Cindy Auerbach and Old World Antiques;

(g) Dr. Nowroozi's claim in Count I against Dr. Check (and thus Old World Antiques) is arbitrable because both doctors have executed several arbitration agreements concerning the management of the medical practice, *see* Memorandum at 7–8;

(h) Plaintiff's claims in Count I against Deena Check, Larry Auerbach, and Cindy Auerbach are stayed because those claims are arbitrable under *Pritzker* and related authority, *see* Memorandum at 10–12;

(i) Counts II and III of the amended complaint, seeking a petition for an order of dissolution and an accounting of the real estate partnerships, are, by the express terms of the arbitration agreements of the parties, manifestly arbitrable;

(j) Count IV of the amended complaint seeks the involuntary winding up and dissolution of the corporations, manifestly relief governed by the parties' arbitration agreements;

(k) Count V of the amended complaint requests appointment of a receiver for the medical practice (presumably both the real estate partnerships and the corporations), relief that, too, is governed by the parties' arbitration agreements;

(*l*) Count VI of the amended complaint is a claim asserted against Dr. Check for breach of fiduciary duty arising out of Dr. Check's position as Chief Operating Officer of the "Medical Practice" (¶ 127), presumably of the Pennsylvania and New Jersey corporations and as general partner in the Pennsylvania real estate partnerships;

(m) Count VI is, in our view, an archetypical internal business dispute encompassed within the arbitration clauses in question because a claim of breach of the Chief Operating Officer's fiduciary duty constitutes a "claim or controversy ... concerning the operation or management of the Corporation [or Partnership]" within the meaning of the various arbitration clauses;

(n) To the extent any breach of fiduciary duty claim as to the New Jersey corporations involves conduct not related to conduct involving the Pennsylvania corporations and real estate partnerships, interests of economy for both the parties and the Court coun-

---

any more at this time than remove these cases from the active docket, and thus the accompanying orders shall place these actions in Civil Suspense pending the outcome of the arbitrations that now should follow.

1. The Check defendants are Dr. Jerome Check, Deena Check, and Old World Antiques.

**66**

sel that this Court should stay its hand in order for such claims to be identified, isolated, and preserved in the arbitrations that will take place, *see* Memorandum at 6–7, n. 1;

(o) Count VII of the amended complaint asserts against Larry Auerbach a claim for breach of a fiduciary duty said to arise out of Auerbach's position as business manager, lawyer, and accountant to the Medical Practice, First Amended Complaint at ¶ 129;

(p) Given Larry Auerbach's status as an agent of the Medical Practice, *Pritzker* directly controls the arbitrability of this claim, *see* Memorandum at 10–11;

(q) Count VIII of the amended complaint alleges that a constructive trust should be imposed on the property wrongly transferred from the Medical Practice to defendants Dr. Check and Larry Auerbach;

(r) Dr. Check, as a signatory to the arbitration clause, must arbitrate all the claims asserted against him, *see* Memorandum at 7–8;

(s) The same conclusion applies to Auerbach in this Count as in the others: because this claim concerns the operation of the medical practice it is an arbitrable claim, and because Auerbach is an agent of the medical practice, it is arbitrable against him, *see* Memorandum at 10–11; and

(t) Count IX of the amended complaint is a claim asserted against three of the Pennsylvania corporations for breach of three employment agreements, and Section 23 of each Employment Agreement explicitly provides that any claim for breach of the employment agreement must be arbitrated; It is hereby ORDERED that:

1. The Check defendants' motion for a stay is GRANTED and Count I is STAYED pending arbitration in accordance with Section 11.5 of the Stock Purchase Agreements and Section 19 of the Shareholders' Agreements of the Pennsylvania corporations, and in accordance with Section 20.1 of the Ansley Manor Partnership Agreement, Stratford House Partnership Agreement and the Old York Manor Partnership Agreement;

2. Counts II and III are STAYED pending arbitration of the claims in accordance with Section 20.1 of the Ansley Manor Partnership Agreement, Stratford House Partnership Agreement and the Old York Manor Partnership Agreement;

3. Count IV is STAYED pending arbitration of the claim in accordance with Section 11.5 of the Stock Purchase Agreements and Section 19 of the Shareholders' Agreements of the Pennsylvania corporations;

4. Counts V, VI, VII, and VIII are STAYED pending arbitration of the claims in accordance with Section 11.5 of the Stock Purchase Agreements and Section 19 of the Shareholders' Agreements of the Pennsylvania corporations, and in accordance with Section 20.1 of the Ansley Manor Partnership Agreement, Stratford House Partnership Agreement and the Old York Manor Partnership Agreement;

5. Count IX is STAYED pending arbitration of the claim in accordance with Section 23 of the Employment Agreements;

6. The Auerbach defendants' motion to dismiss the complaint for lack of jurisdiction or, alternatively, for failure to state a claim is DENIED AS MOOT; and

7. The Clerk shall place this case in CIVIL SUSPENSE pending the outcome of the arbitration(s) contemplated in the subject agreement.