**PAINEWEBBER INCORPORATED; Sheldon Chaiken; Lee H. Lovejoy; Anthony Presogna; Kevin Collins**

v.

**Henry J. FARAGALLI, Jr., Appellant.**

**No. 94–1896.**

United States Court of Appeals, Third Circuit.

Argued, June 27, 1995.

Decided Aug. 4, 1995.

Thomas T. Loder (argued), Christopher P. Stief, Rubin & Associates, Paoli, PA, for appellant.

John M. Linsenmeyer (argued), Morgan, Lewis & Bockius, New York City, Elizabeth H. Fay, Morgan, Lewis & Bockius, Philadelphia, PA, for appellees.

Before: HUTCHINSON, ROTH and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Henry J. Faragalli, Jr. ("Faragalli") appeals from an order of the district court which granted the petition of appellees PaineWebber Incorporated, Sheldon Chaiken, Lee H. Lovejoy, Anthony Presogna and Kevin Collins (collectively, "PaineWebber") to compel arbitration. The principal questions on appeal are two: first, whether PaineWebber's cause of action to compel arbitration under § 4 of the Federal Arbitration Act accrued when Faragalli filed a "Writ of Summons" in the Pennsylvania Court of Common Pleas in 1988 and was thus time-barred when PaineWebber filed its 1994 petition? Second, whether PaineWebber waived its right to compel arbitration by engaging in protracted settlement negotiations with Faragalli and by moving to have Faragalli's state court action dismissed for *non pros*? The district court ruled against Faragalli on both issues and granted PaineWebber's petition to compel. We affirm.

### I.

In 1981, Faragalli, a stockbroker and registered representative of what was then Paine, Webber, Jackson & Curtis, signed a "Uniform Application for Securities and Commodities Industry Representative and/or Agent," thereby committing himself to abide by the rules of the New York Stock Exchange ("NYSE"). NYSE Rule 347 provides as follows:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment by such registered representative by and with such member or member organization shall be settled by arbitration....

App. 758a.

PaineWebber terminated Faragalli's employment sometime in December of 1987. On or about November 16, 1988, Faragalli

filed a Writ of Summons in the Philadelphia Court of Common Pleas. The Writ of Summons named PaineWebber[1] and stated that "[y]ou are notified that the Plaintiff, Henry J. Faragalli, Jr., has commenced an action against you." App. 14a. The Writ gave no information regarding the nature of Faragalli's claims. Under Pennsylvania law Paine-Webber was under no obligation to respond to the Writ, and Faragalli was under no obligation to file an initial pleading unless requested to do so by PaineWebber. Pa. R.Civ.P. 1037.

Shortly after filing the Writ of Summons Faragalli sent PaineWebber's lawyers an unfiled "draft complaint" alleging state law causes of action for breach of contract, defamation, conversion, interference with contractual relations, invasion of privacy, and unjust enrichment. Settlement negotiations ensued, and, as far as we can tell from the record, no complaint was filed by Faragalli in the next five years nor was any other substantive action taken in state court during that time. On November 23, 1993, Faragalli's state court action was automatically dismissed for lack of activity under Pennsylvania's "day backward" docket clearing program.

On April 14, 1994, the Court of Common Pleas granted Faragalli's motion to have his action reinstated but ordered Faragalli to file a complaint within 20 days.

On May 2, 1994, Faragalli filed a complaint claiming that PaineWebber had withheld commissions and other compensation and had committed assorted torts in the process of informing Faragalli's clients that he was no longer employed by PaineWebber. Three days later PaineWebber moved to have Faragalli's action dismissed for *non pros.* This motion was denied without explanation by order of June 17, 1994. App. 407.

On May 23, 1994, some six and one half years after Faragalli's discharge, five and one half years after Faragalli filed the Writ of Summons and 21 days after Faragalli finally filed his complaint, PaineWebber entered a preliminary objection in state court

on the ground that the claims stated in Faragalli's complaint were subject to arbitration. In his June 10, 1994 reply to PaineWebber's objection Faragalli expressly denied for the first time that his claims were subject to arbitration. App. 433.

No discovery or briefing on the merits ever occurred in state court.

Within two months after asserting in state court that Faragalli's claims had to be arbitrated, on July 15, 1994, PaineWebber filed a petition in the Eastern District of Pennsylvania to compel arbitration. Faragalli objected based on timeliness and waiver. By memorandum and order dated August 15, 1994, 1994 WL 440233, the district court ruled that PaineWebber's petition was timely. The court reasoned that "the mere filing of the writ of summons, without the filing of a complaint, was insufficient as a matter of law to constitute a rejection of arbitration." Dist.Ct.Op. at 5. The court also concluded that PaineWebber had not waived its right to arbitrate; held that all of Faragalli's claims were within the scope of the arbitration clause; directed the Court of Common Pleas to stay Faragalli's state court action; and entered an order compelling arbitration.

## II.

Faragalli's first argument is that the applicable four-year statute of limitations on PaineWebber's action to compel arbitration began to run the week of November 16, 1988, when Faragalli filed the Writ of Summons and delivered a draft complaint to Paine-Webber. Because PaineWebber did not petition the court to compel arbitration until July 15, 1994, some five and a half years later, Faragalli maintains that PaineWebber has been barred by the statute for roughly a year and a half. PaineWebber argues that the statute was triggered no earlier than May 2, 1994, when Faragalli actually filed his complaint in state court.

■ The relevant facts are not in dispute, and our review over this issue is plenary.

---

1. It appears from the state court docket that Faragalli failed to serve the writ on petitioners

Chaiken and Collins.

*See Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 869 (3d Cir.1994); *Sheet Metal Workers, Local 19 v. 2300 Group, Inc.,* 949 F.2d 1274, 1278 (3d Cir.1991). As our discussion will reveal, we hold that an action to compel arbitration under the Federal Arbitration Act accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute.

The district court held that the mere filing of the writ of summons, without the filing of a complaint, was insufficient as a matter of law to constitute a rejection of arbitration. Dist.Ct.Op. 5. We agree. Filing a Pennsylvania Writ of Summons cannot constitute an unequivocal refusal to arbitrate because the Writ is silent as to the subject matter of the dispute. Nor does providing an adversary with a draft complaint which has not been filed in court constitute an unequivocal refusal to arbitrate because it does not rule out a willingness to arbitrate. Moreover, even if we were to consider the two documents together, that combination cannot manifest a refusal to arbitrate.

Our review of the record discloses that the only events which could have constituted a rejection of arbitration occurred either on May 2, 1994, when Faragalli filed his complaint in state court, or on June 10, 1994, when Faragalli for the first time expressly denied that his claims were subject to arbitration. In either event, as we discuss *infra,* PaineWebber was not barred by the statute of limitations.

### III.

Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), provides as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof....

9 U.S.C. § 4 (1988).

Because Faragalli claims that Paine-Webber's petition was untimely, we must decide which statute of limitations applies under the FAA, and the date on which the statute started running.

■ The FAA is "something of an anomaly in the field of federal court jurisdiction," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983), in that it gives federal courts the authority to compel arbitration, but does not in itself confer independent federal question jurisdiction. *Id.* Thus, the district court must have an independent jurisdictional basis before it can entertain a petition to compel arbitration under § 4. *National Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485, 493 (3d Cir.1992).

■ Here, jurisdiction is premised on diversity of citizenship. In diversity actions to compel arbitration, timeliness of the petition is determined by reference to the applicable state law statute of limitations. *National Iranian,* 983 F.2d at 492–93. The parties agree that Pennsylvania law applies to this case. Because this action is based on a contractual arbitration clause, Pennsylvania's four-year statute of limitations for contract actions applies. 42 Pa.C.S. § 5525 (1994).[2] While a state statute of limitations may be "borrowed" for a federal claim, federal, not state, law governs as to when the

---

2. The parties do not rely on any contractual provisions setting a time limit for submitting a demand for arbitration.

cause of action accrues. *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir.1988).

Other courts have held that the right to petition for arbitration under § 4 only arises after the adverse party has refused arbitration. *See, e.g. Reconstruction Finance Corp. v. Harrisons & Crosfield,* 204 F.2d 366, 369 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) ("The 'cause of action' for breach of the obligation to arbitrate did not 'accrue' until defendant recently asked Reconstruction Finance Corporation to arbitrate the 'controversy,' and Reconstruction Finance Corporation then refused to comply"); *Hanes Corp. v. Millard,* 531 F.2d 585, 600 n. 12 (D.C.Cir.1976) ("[S]tatute [of limitations] could not begin to run until the [arbitration] agreement was broken, that is to say, until arbitration was sought by one party and refused by the other"). *See also Moses H. Cone Memorial Hospital,* 460 U.S. at 21, 103 S.Ct. at 939 ("[a]n indispensable element of Mercury's cause of action under § 4 for an arbitration order is the Hospital's refusal to arbitrate").

■ Although we do not appear to have passed on the precise issue of when a cause of action accrues under the FAA, we have held in the context of a petition to compel arbitration under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), that such a cause of action "arises when [one of the parties] takes an unequivocal position that it will not arbitrate." *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Elec. Corp.,* 736 F.2d 896, 902 (3d Cir.1984). *Accord Local Joint Executive Bd. of Las Vegas v. Exber, Inc.,* 994 F.2d 674, 676 (9th Cir.1993) ("[T]o start the statute of limitations running [under § 301(a)], an unequivocal, express rejection of the union's request for arbitration must be communicated"); *Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.,* 991 F.2d 1545, 1548 (11th Cir. 1993) (the time period under § 301(a) "begins to run when one party unequivocally refuses to arbitrate the dispute").

We find this doctrine equally applicable to a petition to compel arbitration under the FAA, which provides relief only to those persons "*aggrieved* by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. § 4 (emphasis added). Clearly, unless the respondent has resisted arbitration, the petitioner has not been "aggrieved" by anything. The reason for this rule, though little discussed, is evident: unless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner—hence, the petitioner cannot claim to be "aggrieved" under the FAA.

Moreover, it is doubtful that a petition to compel arbitration filed before the "adverse" party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance. *See, e.g. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982) ("The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies' ") (quoting *Liverpool, N.Y. & P.S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885)).

### IV.

■ It follows that an express refusal to arbitrate a dispute following a demand for arbitration would undeniably start the clock running. However, Faragalli at no time expressly rejected arbitration until June 10, 1994, when, in his response to PaineWebber's objection made in state court that Faragalli's claims had to be arbitrated, Faragalli denied that his state court claims against Paine-Webber were subject to arbitration.[3] At least one court has suggested, however, that the commencement of litigation by one party to a claimed arbitrable dispute can give rise to a cause of action under the FAA, *see Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192, 195 (2d Cir.1984), and PaineWebber concedes that the statute of limitations may have started running on

---

**3.** Faragalli no longer denies that his substantive claims are subject to arbitration.

May 2, 1994, when Faragalli finally filed his complaint in state court.

Faragalli however wishes to go a step further and would have us hold that filing a Pennsylvania Writ of Summons constitutes an unequivocal refusal to arbitrate. We cannot agree. Two factors inform our decision in the present case. First, Faragalli participated in protracted settlement discussions with PaineWebber for a number of years after he filed the Writ, and it was not until after five years had passed that he finally filed a complaint, and then only under court order. While Faragalli's failure to file a complaint is not definitive evidence that he was open to arbitration, it more than supports a conclusion that he had not foreclosed that possibility.

Second, and more importantly, as we have earlier noted, a Pennsylvania Writ of Summons is silent as to the claims asserted by a plaintiff. It neither requires the defendant to take any responsive action, nor does it indicate to the defendant the subject matter of the dispute. Indeed, Pennsylvania courts have emphasized that a Writ of Summons is not a "pleading." *Fox v. Thompson,* 377 Pa.Super. 39, 546 A.2d 1146, 1147 (1988). Hence the defendant cannot file preliminary objections to the Writ, which is the Pennsylvania procedure for asserting the defense of an agreement to arbitrate. *See* Pa.R.Civ.P. 1028(a)(6); *Fox,* 546 A.2d at 1147; *see also Keller v. LaBarre,* 225 Pa.Super. 504, 311 A.2d 683 (1973). And, *a fortiori,* because the defendant cannot know the gravamen of the plaintiff's complaint, the defendant is forestalled from claiming that the parties have agreed to arbitrate the disputed matter.

Because the Writ of Summons here conveyed no information as to Faragalli's causes of action, PaineWebber could not know whether Faragalli's threatened lawsuit fell within the scope of the arbitration clause. Thus, the Writ could not provide evidence that Faragalli, by filing it, was refusing to arbitrate the present claims, which both parties now agree are subject to mandatory arbitration. Hence, the Writ could not and did not convey Faragalli's intent to litigate in court the allegedly arbitrable claims, much

less constitute an unambiguous and unequivocal refusal to arbitrate.

■ While it might be argued that Faragalli's "draft complaint" suggested what Faragalli had in mind when he filed the Writ, Faragalli's contention that the delivery of a draft complaint is a clear refusal to arbitrate, ignores Faragalli's manifest purpose in providing the draft to PaineWebber. Faragalli quite obviously, by not filing the complaint but by simply informing PaineWebber of it, sought to present PaineWebber with his putative claims against PaineWebber in an effort to begin settlement negotiations. Faragalli's failure to file a complaint, his subsequent failure to press forward with his action and his decision to undertake prolonged settlement negotiations with PaineWebber, buttress the district court's and our conclusion that Faragalli had not unequivocally refused to arbitrate.

PaineWebber was entitled to wait until Faragalli made his intentions clear (either by filing a complaint or by clearly manifesting a refusal to arbitrate in some other manner) before it moved to compel arbitration. Thus by Faragalli having failed to reject arbitration unequivocally, PaineWebber had four years from the time its action to compel arbitration accrued in 1994 in which to petition the district court. We therefore affirm the district court on this ground.

### V.

Faragalli next argues that PaineWebber waived its right to arbitration. Faragalli relies primarily on our decision in *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912 (3d Cir.1992). We hold this argument to be without merit.

■ Consistent with the strong preference for arbitration in federal courts, waiver "is not to be lightly inferred," *Gavlik Const. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir.1975) (quoting *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968)); *accord Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 and waiver will normally be found only "where the demand for arbitration came long after

the suit commenced and when both parties had engaged in extensive discovery." *Gavlik*, 526 F.2d at 783.

■ "[P]rejudice is the touchstone for determining whether the right to arbitration has been waived." *Hoxworth*, 980 F.2d at 925.[4] In *Hoxworth* we found prejudice where, in the 11 months prior to seeking arbitration, the petitioners engaged in extensive motion practice, opposed the respondents' motions to compel discovery and deposed all of the named plaintiffs. In *Hoxworth*, the petitioners sought arbitration only after obtaining useful information through discovery and only after the respondents' own motion to compel discovery had been granted.

Here, we have already concluded that PaineWebber's cause of action to compel arbitration did not arise with the filing of the Writ of Summons in 1988. At the very earliest, the right to compel arbitration arose on May 2, 1994, when Faragalli filed his complaint in state court. Within two months, and before any discovery or briefing on the merits, PaineWebber submitted its petition to compel arbitration.[5] Faragalli has neither shown nor demonstrated prejudice due to this two month "delay." To the extent that Faragalli relies on the five year interval between the filing of the Writ of Summons and the eventual litigation of the motion to compel arbitration in federal court, Faragalli must accept equal responsibility, as he took no action during those five years to prosecute his claims against PaineWebber and only engaged in the aforementioned settlement discussions.

■ Faragalli also contends that he was prejudiced due to PaineWebber's May 5, 1994 motion in state court to have his action dismissed for *non pros*, claiming that PaineWebber "sat on their hands, apparently hoping to dispose of Faragalli's claims on the merits in the state court actions, with prejudice, through their *non pros* motions." Appellant's Brief 40. However, Faragalli does not indicate how PaineWebber gained any advantage, or how Faragalli was harmed, by PaineWebber's actions. Faragalli has not suggested that he was "strung along" by PaineWebber during settlement negotiations, nor does he argue that PaineWebber's *non pros* motion was frivolous.

We agree with the district court that Faragalli has shown no prejudice, and hence no waiver.

## VI.

In the memorandum accompanying its order granting PaineWebber's petition to compel arbitration, the district court observed as follows:

> Moreover, at the oral hearing on this matter, counsel were in agreement that following the delivery of the draft complaint to PaineWebber's counsel, for a long period of time, the parties engaged in negotiations to attempt to resolve the matter. During the course of negotiations, the parties exchanged proposed settlement agreements. Some of the proposed settlement agreements included referrals to arbitration, while others did not. Under these circumstances, I find as a matter of fact that there was no rejection or refusal of arbitration communicated to PaineWebber that triggered the running of the statute of limitations.

Dist.Ct.Op. 5.

On appeal Faragalli argues that there is no evidence of record to support the district court's conclusion that arbitration was one possibility considered by the parties during settlement negotiations. While the record

---

**4.** Also relevant to the waiver inquiry is "the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery." *Hox-*

*worth*, 980 F.2d at 926–27 (citations omitted). "Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver." *Id.* at 925 (quoting *Gavlik*, 526 F.2d at 783).

**5.** The state court docket sheet reveals that, prior to 1994, PaineWebber did not participate at all in the state court proceeding.

before us does not include any proposed settlement agreements, we read the district court's opinion to the effect that counsel had made these representations at oral argument. We need not resolve that issue, however, nor need we decide whether the district court's determination was erroneous. We hold that even in the absence of evidence that the option of arbitration was discussed, the facts found, and the conclusions reached, by the district court more than adequately support the conclusion that Faragalli had neither unambiguously nor unequivocally refused to arbitrate simply by filing a Writ of Summons and providing a draft complaint to PaineWebber.

### VII.

The order of the district court granting PaineWebber's petition to compel arbitration will be affirmed.