Elyse S. KLEIN, et al.

v.

William Ballantine BOYD, III., et al.

Civil Action No. 95–5410.

United States District Court,
E.D. Pennsylvania.

Aug. 2, 1996.

Bruce S. Marks, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Elyse S. Klein,

Richard Kastner, Doris Kastner, and Warren Kastner.

William Ballantine Boyd, III, Marlton, NJ, pro se.

John P. Lavelle, Jr., Hangley, Aronchick, Segal and Pudlin, Philadelphia, PA, for William Disston Coleman.

Mitchell S. Rosenzweig, Cherry Hill, NJ and Susan L. Moreinis, Collingswood, NJ, for Mr. and Mrs. Leonard Stevens.

Jeffrey B. Albert, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Thomas H. Tarantino.

Hugh J. Bracken, Media, PA, for Gregory Jamgochian.

Jon A. Baughman, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Drinker, Biddle & Reath.

John A. Lord, Hepburn, Willcox, Hamilton and Putnam, Philadelphia, PA, for Edward J. Kaier.

### MEMORANDUM AND ORDER

YOHN, District Judge.

Defendant William Coleman asks the court to stay certain of plaintiffs' claims against him and order the parties to submit these claims to arbitration. For the reasons outlined below, the court will grant Coleman's motion.

### I. Background:

Many of the facts involved in this case have been detailed in prior memoranda of this court and will not be repeated in detail here. In summary, plaintiffs, Elyse Klein, Richard and Doris Kastner, and Warren Kastner, invested in a limited partnership, Mercer Securities, Ltd., that subsequently failed leaving their investment worthless. They filed a complaint against numerous persons involved with the limited partnership and alleged violations of the federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), and various state laws, including those of common law

fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, and the Pennsylvania securities law. Plaintiffs also allege that defendant Coleman mismanaged their investment accounts. The latter claims, relating to the plaintiffs securities accounts, are the subject of Coleman's motion to stay and to compel arbitration.

Plaintiffs' initial complaint, filed August 23, 1995, contained the general allegation that Coleman mismanaged Klein's investment account, by buying and/or maintaining securities on margin and by not properly diversifying her account, thereby breaching fiduciary duties owed to Klein. (Compl. ¶¶ 89–92, 124.) Plaintiffs' first amended complaint, filed November 20, 1995, contained the same allegations. (First Am.Compl. ¶¶ 115–18, 120, 163–64.) The allegations also included the suggestion that the "Control Defendants" (defined to include defendants Boyd, Thomas T. Tarantino, Lawrence G. Stevens, and Gregory C. Jamogchian) recklessly or negligently supervised Coleman. (Id. at ¶¶ 120, 164.) Plaintiffs' second amended complaint, proposed April 16, 1996, made no additional references to Coleman's alleged mismanagement of Elyse's brokerage account, and no references whatsoever to the Kastners' securities accounts. (Pls.' Mot. to Amend, Ex. A.) On May 23, 1996, plaintiffs proposed a revised second amended complaint "to make clear that Plaintiffs are also seeking damages for Coleman's misconduct in relation to investments which he solicited to purchase other than Mercer, i.e. Kelly Oil and other stocks, (collectively 'Kelly Oil Stocks'), *under this claim against Coleman.*" (Pls.' Mot. to Substitute Second Am.Compl. at 2. (emphasis added)) Plaintiffs clarified that they seek damages against Coleman related to the "Kelly Oil Stocks" based on RICO, common law fraud, negligent misrepresentation, breach of contract, and breach of fiduciary duty. (Id. 2–3.) The proposed second amended complaint also indicates that plaintiffs make claims against the Control Defendants for failing to properly supervise Coleman.[1] (Id., Ex. A. at ¶¶ 155, 161, 175.)

1. The language of the proposed revised second amended complaint does not clearly refer to the Control Defendants' failure to supervise Coleman

with regard to the Kelly Oil Stocks claims. For instance, Count III of the proposed revised second amended complaint contains four para-

On June 17, Coleman filed the present motion to stay and to compel arbitration of all claims concerning their securities accounts.

On July 17, 1996, the court granted in part and denied in part plaintiffs' motions to amend the first amended complaint and to substitute a revised second amended complaint, allowing all of the proposed amendments discussed above.

## II. *Discussion:*

Client's Agreements executed by Klein, Richard and Doris Kastner, and Warren Kastner, and to which Mercer Securities, Ltd. succeeded as a party, contain an arbitration clause providing:

> any and all controversies which may arise between me and CSC or between me and the organization that has introduced my account(s) carried by CSC concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

(Client's Agreement ¶ 20.)[2] Pursuant to this clause, and the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, Coleman seeks to compel arbitration of the claims relating to plaintiffs' securities accounts. Plaintiffs primarily contend that Coleman, a nonsignatory to the Client's Agreements, lacks the authority to compel arbitration of the claims relating to the securities accounts, and, in the alternative, Coleman has waived any right to compel arbitration.

Certainly, courts are in agreement in holding that nonsignatories—usually employees or agents of the signatory—are bound by arbitration clauses and may therefore be compelled to submit them to arbitration. *See, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1120 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Roby v. Corporation of Lloyds,* 996 F.2d 1353, 1358 (2d Cir.1993); *Arnold v. Arnold Corp.,* 920 F.2d 1269 (6th Cir.1990); *Letizia v. Prudential Bache Secs.,* 802 F.2d 1185, 1187–88 (9th Cir.1986). Review of the decisions regarding compelled arbitration, however, reveals no cases in which a nonsignatory-broker has moved for an order to compel arbitration when his signatory-employer has not also joined in the motion.

Plaintiffs argue that the rule that employees are covered by their employers' contractual arbitration clauses does not allow a nonsignatory employee to force arbitration absent the consent of the employer signatory to the agreement. Plaintiffs offer no cases so holding, and the court can find none. In fact, the language of most cases supports a finding that Coleman alone can force arbitration by suggesting that the nonsignatory status of the party seeking to enforce the arbitration clause is not of determinative consequence. For instance, in *Lorber Indus. v. Los Angeles Printworks Corp.,* 803 F.2d 523 (9th Cir.1986), the court held that "[b]ecause [the defendant] was not a party to the contracts [containing the arbitration clause], nor an agent or third par-

---

graphs explaining the alleged misrepresentations and omissions in connection with the sale of investments in Mercer, Ltd. The fifth paragraph states that the "conduct of the Control Defendants and Drinker constituted part of and/or aided and abetted the fraud through their intentional and/or reckless failure to properly disclose material facts regarding Mercer and the failure of the Control Defendants to properly supervise Coleman." The sixth paragraph explains that "Coleman also engaged in fraud by concealing [the alleged material information] from Elyse, who thereby was defrauded into follow [sic] his unsuitable investment advice regarding Kelly Oil and other securities." (Pls.' Mot. to Substitute Revised Second Am.Compl., Ex. A, ¶¶ 151–57.) Plaintiffs fail to clearly indicate in what regard

the Control Defendants are allegedly liable for failure to supervise Coleman.

For purposes of this motion, the court will assume that the claims for failure to supervise relate to Coleman's alleged mismanagement of Klein's account and the Kelly Oil Stocks claims.

2. CSC is a clearing broker whose facilities small brokerage houses use to clear trades. Plaintiffs signed the Client's Agreements when Coleman worked for Edward C. Rorer & Co. When Rorer closed down, plaintiffs' securities accounts were transferred to Mercer Securities, Ltd., which maintained the same relationship with CSC. None of the parties disputes the continuing viability of the Client's Agreements.

ty beneficiary [of the contract], it has no standing to compel arbitration." *Id.* at 524. The *Lorber* court's holding implies that had the defendant simply proven an agency or third party beneficiary relationship, it could have enforced the arbitration clause. The court so implied even in the absence of the signatory defendant from the case.

The Second Circuit has also suggested that nonsignatory employees are able to enforce an arbitration clause stating that individual employees "ought to be able to rely on the contract clauses incorporated into their employers' agreements," and that employees or disclosed agents are "protected by" their employers' agreements to arbitrate. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.1993). In *Arnold v. Arnold Corp.*, the Sixth Circuit noted that officers of a corporation were *"entitled to* arbitration as agents of the signatory defendant." *Id.* at 1281 (emphasis added). In *Chase, v. Check*, 158 F.R.D. 59 (E.D.Pa.1994), another court in this district held that nonsignatory defendants "are agents of the [signatory corporate defendants] and thus their disputes are subject to the arbitration agreements that cover those entities." *Id.* at 64. The *Chase* court found that plaintiff could be compelled to arbitrate claims against nonsignatories, making no suggestion that the proposition depended upon the signatory defendants also requesting arbitration. In contrast, plaintiffs point to no case, and the court finds none, that supports their assertion that a nonsignatory, bound by an arbitration clause, cannot enforce that arbitration clause.[3]

█ Plaintiffs make the alternative argument that Coleman waived any right to compel arbitration pursuant to the arbitration clause. Preliminarily, the court notes

that waiver of contractual rights to arbitration is not to be favored or "lightly inferred." *See, e.g., PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir.1995) (citations omitted). Again, any doubts should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or an allegation of waiver, delay, or some other defense to arbitrability. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941–42.

█ "[W]aiver will normally be found only 'Where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery,'" but prejudice remains the ultimate "touchstone" in determining waiver. *Faragalli*, 61 F.3d at 1068–69 (citations omitted). In addition to prejudice, the *Faragalli* court listed a number of other factors that warrant consideration in evaluating a charge of waiver: (1) the degree to which the party seeking to compel arbitration has contested the merits of his opponent's claims, (2) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings, (3) the extent of its nonmerits motions practice, (4) the moving party's assent to the district court's pretrial orders, and (5) the extent of the discovery. *Id.* at 1069, & n. 4 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926–27 (3d Cir.1992)).

This court only recently allowed plaintiffs to amend their complaint to include any claims involving the Kastners' securities accounts. The court will not find any waiver with regard to claims so recently articulated.

---

**3.** The strong federal policy favoring arbitration, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 224, 107 S.Ct. 2332, 2336, 96 L.Ed.2d 185 (1987), and the directive that any doubts be resolved in favor of arbitration, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983), further convince the court that Coleman can enforce the arbitration clause.

In addition, Mercer Securities, Ltd., though named as a defendant in the complaint's caption, was not served and is not represented by counsel; to expect that it join in Coleman's request to

compel arbitration would indeed be odd. Moreover, contrary to plaintiffs' contention, none of the various versions of plaintiffs' claims relating to their securities accounts names Mercer Securities, Ltd., the party to the contract containing the arbitration clause. As such, plaintiffs lack any basis for demanding that Mercer Securities, Ltd., join in the motion to compel arbitration; there is no reason for it to seek to compel arbitration of claims to which it is not a party.

None of the other defendants to these claims objects to Coleman's motion to compel arbitration.

 The first amended complaint contained general claims about Coleman's mismanagement of Klein's securities account. Since then, the defendants have delayed seeking to compel arbitration and have engaged in extensive discovery.[4] The factors set forth by the Third Circuit in *Hoxworth*, however, do not weigh in favor of finding waiver. As *Hoxworth* and *Faragalli* instruct, prejudice to the plaintiffs warrants dispositive weight in the waiver inquiry. Here, plaintiffs have not shown the requisite prejudice.[5] Of the other factors potentially relevant, the court notes that Coleman has not pursued any merit-based motions practice with regard to any of the claims relating to the securities accounts.[6] The parties have also engaged in extensive discovery, but, as Coleman notes, discovery under only the nonarbitrable claims—the bulk of plaintiffs' extensive claims—would have been as extensive.

For the reasons outlined above, Coleman's motion to stay and compel arbitration will be granted. An appropriate order follows.

### ORDER

AND NOW, this 1st day of August 1996, upon consideration of defendant William Coleman's motion to stay and compel arbitration and the responses thereto, IT IS HEREBY ORDERED that the motion is GRANTED. Pursuant to 9 U.S.C. §§ 3 and 4, plaintiffs' claims concerning their securities accounts are STAYED and plaintiffs are ORDERED to submit any such claims to arbitration in accordance with the terms of their Client's Agreements.

---

4. Coleman contends that because he was fired from Mercer Securities, Inc. and Mercer, Ltd., he did not have access to the agreements containing the arbitration clause and that he only recently acquired the agreements through discovery. Coleman never clarifies "recently," although plaintiffs suggest it could not be later than March 1996. Even if Coleman discovered the arbitration clause in March 1996, his motion to compel arbitration came only two and one half months later. In any case, because prejudice is the "touchstone" factor in determining waiver, whether Coleman discovered the claims were arbitrable in March or June 1996 is not dispositive.

5. Plaintiffs claim that they are prejudiced because they "have been subject to discovery much more extensive than permitted in arbitration." Coleman points out that the discovery relating to the arbitrable claims and the nonarbitrable claims is coextensive, therefore giving rise to no prejudice. *See, e.g., Dickinson v. Heinold Secs., Inc.,* 661 F.2d 638, 642 (7th Cir.1981). Plaintiffs expended $4,000 to obtain an expert report a portion of which discusses the impropriety of the investments Coleman recommended to the Klein. Plaintiffs were not required to obtain such a report, and the report could be used in arbitration or on appeal, if an unsatisfactory arbitration award is entered. Finally, that the plaintiffs may not have trial on these claims by November 1996 does not amount to sufficient prejudice to find waiver of the right to compel arbitration.

6. The fact that Coleman has extensively challenged the merits of plaintiffs' other claims lends credence to Coleman's already persuasive assertion that he only recently understood the existence and nature of plaintiffs' claims relating to their securities accounts.