416 F.Supp.2d 303 (2005)
AEGIS SECURITY INSURANCE COMPANY, a Pennsylvania Corporation, Petitioner
v.
The PHILADELPHIA CONTRIBTIONSHIP FOR THE INSURANCE OF HOUSES FROM LOSS BY FIRE, a Pennsylvania Corporation; Ohio Indemnity Company, an Ohio Corporation; Lloyds Syndicate 1245, a British joint enterprise; Lloyds Syndicate 183, a British joint enterprise; Lloyds Syndicate 205, a British joint enterprise; and Lloyds Syndicate 727, a British joint enterprise, Respondents
No. 1:CV-05-1112.
United States District Court, M.D. Pennsylvania.
August 19, 2005.
*304 Denise S. Kraft, Wilmington, DE, Donald E. Frechette, John B. Rosenquest, III, Edwards & Angell, LLP, Hartford, CT, for Petitioner.
Bruce L. Thall, Joseph Cronin, Peter Von Mehren, Spector Gadon & Rosen, PC, Philadelphia, PA, for Respondents.

MEMORANDUM
RAMBO, District Judge.
Before the court are Petitioner Aegis Security Insurance Company's ("Aegis") Petition to compel arbitration and one of the Respondents, the Philadelphia Contributionship for the Insurance of Houses from Loss by Fire's ("the Contributionship") Cross-Petition to compel arbitration.[1] For the reasons set forth below, the court will order the Contributionship to *305 participate in the arbitration initiated by Aegis.
I. Background
A. Facts
Bonds for the Capital Bonding Company, a Pennsylvania corporation that issues bail and immigration bonds, were issued on Aegis paper. In turn, various reinsurers, pursuant to two different reinsurance treaties, reinsured 100% of Aegis's risk. In 2001, six separate reinsurers, each of whom agreed to reinsure a specific percentage of Aegis's liability entered into the first reinsurance treaty (hereinafter "the 2001 Treaty"). The Contributionship was not a party to the 2001 Treaty. In 2002, five separate reinsurers, each of whom agreed to reinsure a specific percentage of Aegis's liability entered into the second reinsurance treaty (hereinafter "the 2002 Treaty"). The Contributionship was a party to the 2002 Treaty.
Both the 2001 Treaty and the 2002 Treaty contain identical arbitration clauses. Article XXI.A. provides:
As a condition precedent to any right of action hereunder, any dispute arising out of the interpretation, performance or breach of the Agreement, including the formation or validity thereof, shall be submitted for decision to a panel of three arbitrators.
In addition, both the 2001 Treaty and 2002 Treaty contain identical clauses regarding the consolidation of arbitration. Specifically, Article XXI.H provides:
If more than one reinsurer is involved in arbitration where there are common questions of law and fact and a possibility of conflicting awards or inconsistent results, all such reinsurers shall constitute and act as one party for the purposes of the Article and communications shall be made by [Petitioner] to each of the reinsurers constituting the one party; provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint.
In the spring of 2004, Aegis commenced arbitration against Lloyd's Syndicate 1245 ("1245"), based on the terms of the 2002 Treaty (hereinafter "the 2004 Arbitration"). The 2004 Arbitration was based on Aegis's allegations that 1245 had failed to satisfy its obligations under the 2002 Treaty. On August 23, 2004, another reinsurer, the Ohio Indemnity Company ("OIC"), demanded arbitration against Aegis based on the 2001 Treaty and the 2002 Treaty. Initially, OIC asserted that it would not consolidate its claims into the 2004 Arbitration. However, after Aegis initiated suit, OIC agreed to voluntarily consolidate its claims into the 2004 Arbitration. On April 13, 2005, additional reinsurers intervened in the 2004 Arbitration. All reinsurers party to the 2004 Arbitration seek to rescind the terms of the 2001 Treaty and the 2002 Treaty,
Aegis alleges that at the time it commenced arbitration against 1245 and at the time OIC and all additional parties were added to the 2004 arbitration, it had no knowledge of any claims against the Contributionship. According to Aegis, during this time the Contributionship was satisfying its obligations under the 2002 Treaty.
On April 27, 2005, the Contributionship demanded arbitration against Aegis (hereinafter "the 2005 Arbitration"), seeking to rescind the terms of the 2002 Treaty and bring claims against Aegis for fraud, fraud in the inducement, civil conspiracy, RICO, and RICO conspiracy. In response, Aegis demanded that the Contributionship consolidate its claims into the 2004 Arbitration, *306 pursuant to Article XXI.H of the 2002 Treaty; however, the Contributionship refused to do so. Specifically, the Contributionship stated that it would not consolidate its claims into the 2004 Arbitration because "the interests of the Contributionship are unquestionably best served through [a]rbitration with Aegis, separate and apart from the [2004 Arbitration]." (Pet.'s Am. Pet., Ex. F.)
B. Procedural History
On June 6, 2005, Aegis filed its initial Petition seeking as relief an order compelling all parties to consolidate all claims, counterclaims, and cross claims into the 2004 Arbitration. On June 16, 2005, following a telephonic conference, the court ordered briefing on the issue of whether or not the court had jurisdiction to compel the consolidation of all claims, counterclaims, and cross claims into the 2004 Arbitration. (Doc. 13.)
On July 1, 2005, the Contributionship filed a brief in accordance with the court's order. (Doc. 17.) That same date, the Contributionship filed a Cross-Petition to compel Aegis to participate in the 2005 Arbitration. (Doc. 18.) On July 5, 2005, Aegis filed a response to the Contributionship's Cross-Petition. (Doc. 19.) On July 6, 2005, Aegis filed a brief supporting their opposition to the Contributionship's Cross-Petition. (Doc. 21.)
Additionally, on July 6, 2005, Aegis filed a brief in accordance with the court's June 16, 2005 order (Doc. 23) and an Amended Petition.[2] (Doc. 22.) While the facts alleged in the Amended Petition did not change, Aegis sought to change the form of relief requested. Specifically, Aegis requested an order compelling the Contributionship to put before the 2004 Arbitration panel whether the claims and defenses of the Contributionship should be consolidated into the 2004 Arbitration. Aegis's brief in accordance with the court's June 16, 2005 order conceded that the court did not have jurisdiction to compel the consolidation of all claims, counterclaims and cross-claims into the 2004 Arbitration; however, Aegis argued that the court had jurisdiction to compel arbitration in accordance with the relief requested in its Amended Petition.
On July 11, 2005, the Contributionship filed a responsive brief to Aegis's opposition to the Contributionship's Cross-Petition. (Doc 26.) On July 12, 2005, Aegis filed a motion to strike portions of the Contributionship's response to the court's June 16, 2005 order and July 11, 2005 responsive brief. (Doc. 33.) That same date, Aegis filed a reply brief to the Contributionship's Cross-Petition. (Doc. 31.)
On July 14, 2005, the court received the Contributionship's motion for leave to file a reply brief to Aegis's brief in accordance with the court's June 16, 2005 order. (Doc. 32.) The Contributionship argued that because Aegis had changed the relief requested in its Amended Petition and put forth arguments in support of its Amended Petition in its responsive brief to the court's June 16, 2005 order, it should have an opportunity to respond to Aegis's arguments.
On July 15, 2005, Aegis filed an objection to the Contributionship's request to file a reply brief. (Doc. 35.) In the alternative, Aegis requested leave to file a surreply brief. (Id.) On July 19, 2005, the Contributionship filed a brief in opposition to Aegis's motion to strike (Doc. 37), and on that same date, Aegis filed a reply brief *307 in support of its motion to strike. (Doc. 38.)
In an effort to dam the deluge of filings and to clarify the issues before the court, the court ordered oral arguments on all of the outstanding motions, including Aegis's Petition and the Contributionship's Cross-Petition. (Doc. 40.) On July 29, 2005, the Contributionship filed an answer to Aegis's Amended Petition. (Doc. 42.) On August 8, 2005, the court heard oral arguments.
To summarize, the court must address the following issues. First and foremost are Aegis's Amended Petition to compel the Contributionship to participate in the 2004 Arbitration and the Contributionship's Cross-Petition to compel Aegis to participate in the 2005 Arbitration. As a preliminary matter, the court must first address the following: Aegis's motion for leave to file an amended petition; the Contributionship's motion to file a reply brief to the court's June 16, 2005 order and Aegis's motion in opposition or in the in the alternative for leave to file a sur-reply brief; and Aegis's motion to strike.
II. Discussion
A. Aegis's Amended Petition
As relief, Aegis's initial Petition requested that the court order the consolidation of all claims, counterclaims and cross claims into the 2004 Arbitration. Based upon Aegis's requested relief, the court ordered briefing with respect to its jurisdiction to compel consolidation. Aegis now seeks to amend its Petition to request that the court order the the Contributionship to put before the 2004 Arbitration panel whether the claims and defenses of the Contributionship should be consolidated into the 2004 Arbitration.
Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint should be freely given when justice so requires. The Contributionship has not filed a brief opposing Aegis's motion for leave to file an amended petition. Moreover, based upon the parties' briefs in response to the court's June 16, 2005 order, it appears that the court does not have jurisdiction to compel consolidation. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("`"[P]rocedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide."). Thus, denial of Aegis's request for leave would essentially moot its Petition as it stands before the court. As a result, Aegis would be required to file a new petition to obtain the relief it now seeks in its Amended Petition. Such a result would frustrate the goals of justice and judicial economy. Accordingly, the court will grant Aegis's motion for leave to file an amended petition.[3]
B. The Contributionship's Motion for Leave to File a Reply Brief
The court's June 16, 2005 order provided both Aegis and the Contributionship with the opportunity to file one brief in support of their position regarding the court's jurisdiction to compel consolidation of all claims, counterclaims, and cross-claims into the 2004 Arbitration. The Contributionship filed its brief on July 1, 2005. Subsequently, Aegis filed a brief in *308 response to the court's order and a motion for leave to file an amended petition. Aegis's Amended Petition seeks entirely new relief. Furthermore, Aegis's response to the court's order presented arguments based upon the relief requested in its Amended Petition. In support of its motion for leave to file a reply brief, the Contributionship asserts that it has not had an opportunity to respond to Aegis's position. The court agrees. Thus, the court will grant the Contributionship's motion for leave to file a reply brief to the court's June 16, 2005 order. The Contributionship's reply brief to the court's June 16, 2005 order will be considered for purposes of this memorandum and order. Additionally, the court sees no reason to permit Aegis to file a sur-reply to the court's June 16, 2005 order.
C. Aegis's Motion to Strike
On July 12, 2005, Aegis filed a motion to strike portions of the Contributionship's response to the court's June 16, 2005 order and July 11, 2005 responsive brief. Aegis asserts that the Contributionship has improperly included matters related to its Cross-Petition. Aegis contends that the Contributionship's Cross-Petition was not within the scope of issues contemplated by the court when it ordered the parties to brief the issue of consolidation. Thus, according to Aegis, these issues were not properly before the court.
The court finds Aegis's position to be disingenuous. While the Contributionship's Cross-Petition was not before the court when it issued its June 16, 2005 order, neither was Aegis's request of entirely new relief as set forth in its Amended Petition. Moreover, both parties have been given ample opportunity to address all pertinent issues during the August 8, 2005 oral arguments. Accordingly, the court will deny Aegis's motion to strike.
D. Aegis's Amended Petition and The Contributionship's CrossPetition
Before the court can address Aegis's Amended Petition and the Contributionship's Cross-Petition, the court must first establish the jurisdictional parameters that govern a petition to compel arbitration.[4] As provided by the Supreme Court: "The preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). District courts have jurisdiction to determine certain gate keeping issues including "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). If there is doubt about the scope of the arbitrable issues, the court should rule in favor of arbitration. Id.; see also E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Title 9 U.S.C. § 4 of the Federal Arbitration Act provides:

*309 A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
Thus, the first issue for the court to determine is whether the parties have a valid arbitration agreement. If it is determined that the parties have a valid arbitration agreement, the court must determine if there has been a failure by one of the parties to arbitrate. If there has been a failure to arbitrate, then the court has jurisdiction to compel the parties to participate in arbitration.
In the instant case, it is not disputed that the parties have a valid arbitration agreement. Moreover, it is not disputed that the arbitration agreement contains a valid consolidation clause. Aegis's Amended Petition asserts that the Contributionship has failed to arbitrate and should be compelled to arbitrate before the 2004 panel. Similarly, yet diametrically opposite, is the Contributionship's position that Aegis has failed to arbitrate and should be compelled to arbitrate before the 2005 panel. Each party unequivocally denies that it has refused to arbitrate.
As stated, Aegis initiated the 2004 arbitration. According to the Contributionship, Aegis never informed the Contributionship that Aegis intended to bring the Contributionship into the 2004 arbitration. However, at the time Aegis initiated the 2004 arbitration, there were no arbitratable claims between Aegis and the Contributionship.
In April 2005, the Contributionship initiated arbitration against Aegis. At that point, Aegis demanded that the Contributionship consolidate its claims into the 2004 Arbitration. It is undisputed that the Contributionship has refused to do so. The Contributionship's argument hinges upon the fact that they have initiated separate arbitration proceedings against Aegis. Thus, according to the Contributionship, they have not failed to arbitrate, but rather actively seek arbitration. According to the Contributionship, it is not the Contributionship, but Aegis who has failed to arbitrate.
The Contributionship asserts that the "clear language of the [Federal Arbitration Act]" provides that this court lacks jurisdiction because the Contributionship has not manifested "the intention not to arbitrate." (Resp't's Resp. Ct.'s June 16, 2005 Order at 6.) In support, the Contributionship cites to PaineWebber, Inc. v. Faragalli, 61 F.3d 1063 (3d Cir.1995). The court finds the Contributionship's reliance on PaineWebber misplaced. PaineWebber dealt with a situation where a party filed a writ of summons in a state court. In PaineWebber, the court found that
[f]iling a Pennsylvania Writ of Summons cannot constitute an unequivocal refusal to arbitrate because the Writ is silent as to the subject matter of the dispute. Nor does providing an adversary with a draft complaint which has not been filed in court constitute an unequivocal refusal to arbitrate because it does not rule out a willingness to arbitrate. Moreover, even if we were to consider the two *310 documents together, that combination cannot manifest a refusal to arbitrate.
Id. at 1066. Thus, the Paine-Webber court found that the respondent had not failed to arbitrate. However, the Paine-Webber court did not address a situation, like the instant case, where a party has refused to participate in an already initiated arbitration and instead initiated separate arbitration proceedings. In spite of the Contributionship's misplaced reliance on Paine-Webber, the court finds Paine-Webber's rationale to be instructive to the merits of the instant case. In Paine-Webber the court provided that
Unless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitionerhence, the petitioner cannot claim to be "aggrieved" under the FAA.
Id. at 1067.
In the instant case, the Contributionship has refused to arbitrate a dispute covered by the arbitration agreement, namely whether or not the issues and defenses put forth by the Contributionship ought to be consolidated into the 2004 arbitration. As stated, Article XXI.A. provides:
As a condition precedent to any right of action hereunder, any dispute arising out of the interpretation, performance or breach of the Agreement, including the formation or validity thereof, shall be submitted for decision to a panel of three arbitrators
Moreover, Article XXI.H of the 2002 Treaty provides that
if more than one reinsurer is involved in arbitration where there are common questions of law and fact and a possibility of conflicting awards or inconsistent results, all such reinsurers shall constitute and act as one party for the purposes of the Article and communications shall be made by [Petitioner] to each of the reinsurers constituting the one party.
By failing to arbitrate the issue of consolidation before the 2004 Arbitration panel, the Contributionship has "refused to arbitrate a dispute putatively governed by a contractual arbitration clause." PaineWebber, Inc., 61 F.3d at 1067. Thus, the court finds that it has jurisdiction to compel the Contributionship to participate in the 2004 Arbitration and will order the Contributionship to proceed to the 2004 Arbitration for a determination of the issue of consolidation.
The court notes that the Contributionship argues that Aegis has waived its rights to compel the Contributionship to participate in the 2004 Arbitration. Additionally, the Contributionship asserts that it would be prejudiced by having to arbitrate before the 2004 panel so late in the game. These are procedural issues best decided by the 2004 Arbitration panel. Howsam, 537 U.S. at 85, 123 S.Ct. 588 ("`"[P]rocedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide."). Thus, the court makes no determination with respect to these issues.
With respect to the Contributionship's Cross-Petition, the court finds that it is mooted by the court's decision. As stated, it is not in the jurisdiction of the court to compel consolidation; the issue of consolidation is to be decided by an arbitration panel. The 2004 Arbitration was already initiated when the Contributionship attempted to bring arbitration against Aegis; accordingly the issue is whether the claims should be consolidated into the 2004 Arbitration. *311 This is a decision best made by the 2004 Arbitration panel.
If the 2004 panel decides that consolidation is proper, all of the Contributionship's claims and defenses would be incorporated into the 2004 Arbitration. Accordingly, there would be no need for the 2005 Arbitration. On the other hand, if it is decided that some issues should not be consolidated, Aegis would be required to arbitrate those issues separately from the 2004 Arbitration. However, this is an issue only if the 2004 Arbitration panel decides that some issues should not be consolidated and Aegis refuses to arbitrate those issues. Accordingly, the Contributionship's Cross-Petition will be deemed moot.
III. Conclusion
In accordance with the foregoing discussion, the court will grant Aegis's motion for leave to file an amended petition, the court will grant the Contributionship's motion to file a reply brief to the court's June 16, 2005 order, the court will deny Aegis's motion to file a sur-reply brief to the court's June 16, 2005 order, and the court will deny Aegis's motion to strike. Additionally, the court will grant Aegis's Amended Petition to compel the Contributionship to participate in the 2004 Arbitration for purposes of determining the issue of consolidation. Finally, the court will deem the Contributionship's Cross-Petition moot. An appropriate order will issue.

ORDER
In accordance with the foregoing memorandum of law IT IS HEREBY ORDERED THAT:
1) Aegis's motion for leave to file an amended petition (Doc. 22) is GRANTED.
2) The Contributionship's motion for leave to file a reply brief to the court's June 16, 2005 order (Doc. 32) is GRANTED.
3) Aegis's motion for leave to file a surreply brief (Doc. 35) is DENIED.
4) Aegis's motion to strike (Doc. 33) is DENIED.
5) Aegis's Amended Petition (Doc. 22.) is GRANTED.
6) The Contributionship's Cross-Petition (Doc. 18) is MOOT.
7) The clerk of court shall close the file.
NOTES
[1] In addition, numerous motions that relate directly to the Petition and the CrossPetition are before the court. The court will address these motions in the discussion section of this memorandum.
[2] The court notes that Aegis's July 6, 2005 filing of its Amended Petition did not include a motion for leave to file an amended petition. Aegis filed a motion for leave to file an amended petition on July 14, 2005. (Doc. 32.)
[3] The court notes that during the August 8, 2005 oral arguments the Contributionship expressed no opposition to Aegis's motion for leave to file an amended petition. Moreover, the Contributionship, in a July 21, 2005 letter to the court, stated that it would not be filing an opposition to Aegis's motion for leave to file an amended petition. (Doc. 39.) Accordingly, the court did not provide for briefing with respect to Aegis's motion for leave to file an amended petition.
[4] As stated, Aegis's initial Petition requested an order consolidating all claims, counterclaims, and cross-claims into the 2004 arbitration. However, Aegis, in its Amended Petition has redefined the nature of the relief it requests. Specifically, Aegis now seeks an order compelling Contributionship to put before the 2004 arbitration panel the question of whether the claims and the defenses of the Contributionship should be consolidated into the 2004 Arbitration. Thus, the court need not address whether it has jurisdiction to compel the consolidation of arbitration.