**EXPOFRUT S.A. and Bocchi Americas Associates,**

v.

**M/V ACONCAGUA; Shenlong Maritime Private Ltd.; and Arctic Reefers A.S.**

No. CIV.A.02–1276.

United States District Court, E.D. Pennsylvania.

Aug. 7, 2003.

Dante Mattioni, Stephen J. Galati, Mattioni, Ltd., Philadelphia, PA, for Plaintiffs Expofrut S.A. and Bocchi Americas Associates.

Frank P. De Giulio, Palmer, Biezup & Henderson LLP, A. Robert Degen, Fox, Rothschild, O'Brien & Frankel LLP, Philadelphia, PA, for Defendants M/V ACONCAGUA, Shenlong Maritime Private Ltd. and Arctic Reefers A.S.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

On July 28, 2003, plaintiffs filed a notice of appeal to the Court's July 1, 2003 Order

in which the Court denied Plaintiffs' Motion to Stay. The Court writes pursuant to Third Circuit Local Appellate Rule 3.1 to supplement its July 1, 2003 ruling.[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Expofrut, a shipper of cargo fruit, contracted with defendant Shenlong Maritime Ltd to deliver fruit on its cargo vessel ACONCAGUA, shipping from Argentina to Philadelphia in February of 2002.[2] The ACONCAGUA arrived in Philadelphia on February 27, 2002 and the United States Department of Agriculture directed the vessel to retain the cargo in order to complete the required "cold treatment" procedure used to eradicate the Mediterranean Fruit Fly larvae. The discharge of the cargo began on March 11, 2002 and lasted four days, with the last of the fruit cargo being removed from the vessel on March 15, 2002.

On March 13, 2002, plaintiffs filed this case in admiralty seeking to recover in excess of 1.1 million dollars in alleged damages to their fruit cargo.[3] The parties engaged in discovery that included the exchange of over 54 categories of documents and the depositions of several vessel officers. On November 15, 2002, plaintiffs served their Initial Disclosures and produced over 507 pages of additional documents. Counsel for the parties each submitted Scheduling Information Reports stating when expectation of pertinent dates such as the completion of factual

discovery and when the matter would be ready for trial.

On February 18, 2003, counsel for the parties submitted a Joint Proposed Discovery Plan to the Court in which the parties stated: "To date, multiple depositions have been completed. The parties have engaged in extensive document exchange. The major outstanding discovery issue is the plaintiffs' damage claims." On February 19, 2003, a scheduling conference was held in this Judge's chambers where all matters relating to case management and scheduling were discussed. The Court issued a Scheduling Order on February 25, 2003 setting forth various pre-trial deadlines for the completion of fact and expert discovery and for the filing of pre-trial motions.

On February 28, 2003, nearly a full year after plaintiffs filed their Complaint, defendant Shenlong Maritime Private Ltd received a telefax informing them that the Singapore Office of English Solicitors Clyde & Co. had appointed an arbitrator for this matter. On April 24, 2003, the Court was informed by letter that plaintiffs were considering a stay of this case pending arbitration and requested an extension of the dispositive motion deadline in order to engage in meaningful settlement discussions. In an effort to facilitate settlement negotiations the Court granted the extension. However, on June 9, 2003, fifteen months after the filing of this action, plaintiffs filed their Motion to Stay Pending Arbitration.[4] On June 26, 2003,

---

1. The Third Circuit Court of Appeals Rule 3.1 authorizes the trial judge to file a written opinion or amplification within 15 days after the filing of a notice of appeal.

2. Although the contract and bills of lading contained an arbitration agreement referring any dispute to arbitration in London, England, the Complaint is devoid of any reference to said agreement.

3. This action was originally assigned to the Honorable Charles R. Weiner, but was randomly reassigned to this Judge on December 23, 2002.

4. Plaintiffs moved to stay this action in order to allow the parties to arbitrate their dispute in London, England, according to English law, as provided by the Bill of Lading and Charter. Plaintiffs requested that this Court

defendants filed a Join Brief in Opposition of Plaintiffs' Motion to Stay. On July 1, 2003, the Court denied Plaintiffs' Motion to Stay due to the waiver of plaintiffs' arbitration rights. The Court now writes to supplement that decision.

## II. DISCUSSION

 The Court is mindful that arbitration is generally preferred in federal court. *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1068 (3d Cir.1995). Consistent with this notion, waiver of arbitration shall not be lightly inferred. *Id.* Notwithstanding this strong preference, "the Third Circuit has made clear that when a party delays asserting its arbitration right, and thereby causes prejudice to the other party, courts have not hesitated to hold that the right to arbitrate has been waived." *Perry v. Sonic Graphic Sys.,* 94 F.Supp.2d 623, 625 (E.D.Pa.2000) (internal quotes and citations omitted); *see also Faragalli,* 61 F.3d at 1069 (explaining that "[p]rejudice is the touchstone for determining whether the right to arbitration has been waived"); *Hoxworth v. Blinder Robinson & Co.,* 980 F.2d 912 (3d Cir.1992) (finding waiver of arbitration when petitioner engaged in substantial discovery and motions practice for 11 months before seeking arbitration); *Eagle Traffic Control v. James Julian, Inc.,* 945 F.Supp. 834, 836 (E.D.Pa.1996) (holding that defendants waived their right to arbitration where they actively litigated the action for seven months).

In *Perry,* the court held that defendant's right to arbitration was waived when defendant delayed asserting its right to arbitration, thereby causing prejudice to the plaintiff. The following factors were considered by the court to determine whether waiver was appropriate:

(A) lack of timeliness of the motion to arbitrate; (B) degree to which the party seeking to compel arbitration has contested the merits of its opponents' claims; (C) whether the party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; (D) the extent of its non-merits motion practice; (E) its assent to the district court's pretrial orders; and (F) the extent to which both parties have engaged in discovery.

*Perry,* 94 F.Supp.2d at 625 (relying on factors set out by *Hoxworth,* 980 F.2d at 912). The court found that five out of the six factors weighed in favor of waiver because defendant: (1) requested the arbitration fourteen months after the Complaint was filed; (2) answered the Complaint with no reference to arbitration; (3) gave all indications it assented to the court's Scheduling Order; and (4) engaged in extensive written discovery before raising the issue of arbitration. *Id.* at 625–26.

 Similarly, in this case, after considering the *Hoxworth* factors, the Court finds that plaintiffs have waived their rights to arbitration for the following reasons: (1) Plaintiffs filed their Complaint on March 13, 2002 praying for complete relief with no reference of their intent to arbitrate; (2) Plaintiffs filed various ex parte pleadings to effect the arrest and attachment of the ACONCAGUA with no mention of their intent to arbitrate; (3) Plaintiffs engaged in extensive discovery from the filing of the Complaint until their notice of intent to arbitrate on February 28, 2003 (nearly one year later); (4) Plaintiffs submitted a Scheduling Information Re-

retain jurisdiction over the parties and the security in order to enforce any arbitration

award entered.

port to this Court with no reference to arbitration while informing the Court that factual discovery in this action could be completed by August 30, 2003, and that the case could be ready for trial by December 15, 2003; (5) Plaintiffs submitted a Joint Proposed Discovery Plan to this Court with no reference to arbitration in which it was explained that multiple depositions have been completed and that the parties engaged in extensive document exchange; (6) Plaintiffs' counsel attended an initial scheduling conference with the Court on February 19, 2003, with no representation that the plaintiffs intended to seek arbitration of the disputes.

Notwithstanding consideration of these factors, the Court further finds that the prejudice defendants would suffer by granting Plaintiffs' Motion to Stay is the decisive factor in the Court's determination that plaintiffs have indeed waived their right to arbitration. Not only would referring this case to arbitration one month before the close of discovery cause prejudice to defendants by the unnecessary delay and expense of the past years' litigation process, but defendants would also be deprived of the ability to obtain testimony and evidence in support of their defense. During the February 19, 2003 scheduling conference, plaintiffs clearly represented to the Court that their discovery was nearly complete and that the remaining discovery related to defendants' discovery on damages. Nonetheless, only nine days after the scheduling conference, plaintiffs provided their first communication to defendants that arbitration of their claims may be sought in London, England.

The Court further notes that the arbitration discovery process in London, England, differs vastly from that allowed under the Federal Rules of Civil Procedure. *See* Declaration of English Solicitor Andrew Wright, Defendants' Exhibit 13 at

¶ 12 (explaining that the English Arbitration Acts do not allow a party to compel the testimony of a witness outside of the United Kingdom). Granting a stay at this late stage in the discovery process would allow plaintiffs to utilize useful information gathered through the discovery process here in the United States and would foreclose defendants' right to seek similar, useful information on their own behalf. *See Hoxworth,* 980 F.2d at 926 (finding waiver of arbitration where defendants were able to utilize the Federal Rules to conduct discovery not available in the arbitration forum and where plaintiff devoted substantial amount of time, effort and money in the litigation of its claims); *See also Eagle Traffic Control.,* 945 F.Supp. at 836 (explaining that substantially invoking the litigation process is the type of prejudice that leads to waiver). Therefore, because the plaintiffs invoked the litigation machinery for well over 11 months, the Court finds that plaintiffs have waived their right to arbitration.

Accordingly, for the reasons stated above, the Court denied Plaintiffs' Motion to Stay.