

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2007

# Ehleiter v. Grapetree Shores Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-2542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ehleiter v. Grapetree Shores Inc" (2007). *2007 Decisions.* Paper 1169.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1169

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 06-2542

_____

JACK EHLEITER

v.

GRAPETREE SHORES, INC.
Appellant

_____

On Appeal From the District Court
of the Virgin Islands,
Division of St. Croix
(D.C. Civil Action No. 05-cv-00056)
District Judge:  Hon. Raymond L. Finch
District Judge: Hon. Stanley S. Brotman
Superior Court Judge: Hon. Audrey L. Thomas

_____

Argued December 4, 2006

BEFORE:  McKEE, BARRY and STAPLETON,
Circuit Judges

(Opinion Filed April 6, 2007)

——————

Joel H. Holt (Argued)
2132 Company Street, Suite 2
Christiansted, St. Croix
USVI  00820
  Attorney for Appellee

Charles E. Engeman (Argued)
Simone R.D. Francis
Ogletree, Deakins, Nash, Smoak & Stewart
1336 Beltjen Road, Suite 202
Charlotte Amalie, St. Thomas
USVI  00802
  Attorneys for Appellant

——————

OPINION OF THE COURT

——————

STAPLETON, Circuit Judge:

After litigating this case before the Superior Court of the Virgin Islands ("Superior Court") for nearly four years, Appellant Grapetree Shores, Inc. ("GSI") moved to stay the

2

court proceedings pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"). The Superior Court denied the motion, finding that GSI had waived any right it may have had by actively litigating the plaintiff's claims. The Appellate Division of the District Court of the Virgin Islands ("Appellate Division") affirmed the decision of the Superior Court on appeal.

This interlocutory appeal presents three principal issues. First, we must examine the contours of appellate jurisdiction under the FAA to determine whether the Appellate Division had jurisdiction over GSI's appeal from the Superior Court's denial of its Section 3 motion, and whether we, in turn, have jurisdiction to review the Appellate Division's order affirming the Superior Court's ruling. We conclude that Section 16(a)(1)(A) of the FAA conferred appellate jurisdiction on the Appellate Division to review the Superior Court's decision, and also provides the basis for our jurisdiction over GSI's appeal from the Appellate Division's decision. Second, we must determine if the issue of whether a party seeking arbitration has waived its right thereto by litigating the case in court remains a question for the trial court, rather than an arbitrator, to decide in the wake of *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (plurality opinion). We conclude that it does. Third, we must consider whether the Superior Court correctly found on the merits that GSI waived any right it had to arbitrate by actively litigating this case before that court. We agree with both the Superior Court and the Appellate Division that a finding of waiver is compelled under the facts and circumstances of this case. Accordingly, we will affirm the judgment of the Appellate

3

Division.

I.

Appellant GSI is the owner of real property in the Virgin Islands which it leased to Treasure Bay VI Corp. ("TBVI"). At all times here relevant, TBVI operated a casino known as the Divi Carina Bay Casino ("the Casino") on the GSI-owned property. Appellee Jack Ehleiter was employed with TBVI as a card dealer and at the commencement of his employment, entered an Hourly Employment Agreement ("the Agreement") with TBVI, setting forth the terms and conditions of his employment.

Ehleiter allegedly slipped and fell while walking down an employee stairway of the casino. In April 2001, he filed a complaint against GSI in the Superior Court (then known as the Territorial Court of the Virgin Islands), seeking damages for personal injuries he allegedly sustained as a result of the fall. GSI filed an answer to the complaint with affirmative defenses and, over approximately the next four years, the parties engaged in extensive discovery. Both parties submitted and responded to several sets of interrogatories and requests for production of documents, took numerous depositions,[1] and submitted several expert reports. On May 13, 2003, while discovery was still ongoing and in response to a court order, the parties submitted

---

[1]It appears from the record that a total of nineteen depositions were taken by the parties. Although it is unclear how many were taken by each party respectively, there is no dispute that both parties took depositions in this case.

a joint stipulation certifying their readiness for trial by December 1, 2004. The parties participated in a mediation session on November 16, 2004, but were unable to resolve the dispute. On December 2, 2004, in response to a motion filed by Ehleiter requesting a trial date, the Superior Court entered an order scheduling trial for February 14, 2005 and requiring all discovery be completed by January 5, 2005. Five days later, on December 7, 2004, GSI moved to continue the trial date, noting that the date that had been set by the Superior Court conflicted with a previously scheduled trial involving GSI's counsel. In the motion, GSI requested a new trial date in March or April 2005. On December 10, 2004, the Superior Court granted GSI's request, and rescheduled the trial for March 31, 2005.

Over the course of the next six weeks, GSI filed a motion for summary judgment and a motion to implead a third party defendant, and Ehleiter filed a motion to amend his complaint to include a claim for punitive damages against GSI. All three motions had been fully briefed and were pending decision by the Superior Court when, on February 17, 2005, the final day for filing motions and only one day before the parties' joint final pretrial statement and proposed jury instructions were due, GSI filed a motion to stay the case pending arbitration pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. In its motion, GSI asserted, for the first time, that, as an affiliated company of TBVI, it was entitled to have the dispute arbitrated pursuant to the arbitration provisions in the Agreement entered into by Ehleiter and TBVI. Under the terms of that Agreement, Ehleiter agreed to arbitrate, inter alia, all claims against "affiliated companies" of TBVI arising from his employment.

In response, Ehleiter contended that GSI was not entitled

to invoke the arbitration provisions of the Agreement because it was not an "affiliated company" of TBVI and that, in any event, GSI had waived whatever arbitration rights it had under the Agreement by actively litigating the matter for nearly four years. Over GSI's objections, the Superior Court concluded that the question whether GSI had waived any arbitration rights it had under the Agreement was for the court, rather than an arbitrator, to decide. Without resolving whether GSI was an "affiliate" of TBVI under the Agreement, the Superior Court denied GSI's motion, agreeing with Ehleiter that GSI had waived any right it had to arbitration by actively litigating the case.

GSI appealed the Superior Court's decision to the Appellate Division, and the Appellate Division affirmed. GSI timely filed this appeal, and we thereafter granted GSI's emergency motion to stay the proceedings in the Superior Court pending our resolution of the appeal.

## II.

Although the parties have not raised the issue, a court of appeals has both the inherent authority and a continuing obligation to assess whether it has jurisdiction over a case or controversy before rendering a decision on the merits. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 585 (3d Cir. 1999); *Shendock v. Director, Office of Workers' Compensation Programs*, 893 F.2d 1458, 1461 (3d Cir. 1990) (en banc). We must therefore determine as a threshold matter whether we have jurisdiction to consider the merits of this appeal from an order of the Appellate Division affirming the Superior Court's interlocutory order denying a motion to stay the court proceedings before it pending

arbitration.  As a predicate to that determination, we inquire also into the jurisdiction of the Appellate Division to review the Superior Court's interlocutory order.  We conclude that Section 16(a)(1)(A) of the FAA conferred appellate jurisdiction on both courts.  9 U.S.C. § 16(a)(1)(A).

GSI sought to stay the proceedings before the Superior Court pursuant to Section 3 of the FAA, which provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.[2]  Section 16(a)(1)(A) provides that "[a]n appeal may be taken from an order refusing a stay of any action under

---

[2] We have held that the FAA applies to local matters litigated in the Superior Court of the Virgin Islands.  *See Gov't of the Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172, 175-78 (3d Cir. 1999).

section 3 of this title." 9 U.S.C. § 16(a)(1)(A).[3]

---

[3]Section 16 provides in full as follows:

(a) An appeal may be taken from -

(1) an order -
(A) refusing a stay of any action under section 3 of this title,
(B) denying a petition under section 4 of this title to order arbitration to proceed,
(C) denying an application under section 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order -

(1) granting a stay of any action under section 3 of this title;

We first examine whether Section 16(a)(1)(A) authorized the Appellate Division to exercise jurisdiction over GSI's appeal of the Superior Court's order denying its Section 3 motion. GSI's stay motion in the Superior Court alleged that the claim at issue in that suit was within the scope of a written agreement to arbitrate and claimed entitlement to a stay mandated by Section 3. Its motion thus alleged a prima facie case of entitlement to a Section 3 stay. That motion was denied. It follows, from a literal reading of Section 16(a)(1)(A) and our interpretive case law, we conclude, that that section conferred jurisdiction on the Appellate Division to review the Superior Court's denial of a stay.

In reaching this conclusion, we are mindful of the facts that Section 3's mandatory stay provision applies only where the claims at issue are "referable to arbitration under an agreement in writing for such arbitration," 9 U.S.C. § 3, and that the Appellate Division, like the Superior Court, did not resolve whether GSI was an "affiliate" of TBVI, an essential predicate to a finding that Ehleiter's claims were referable to arbitration

---

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16.

under an agreement in writing.  Instead, the Appellate Division, like the Superior Court, found that GSI had waived any right it may have had to arbitrate and did not reach the "affiliate" issue. An affirmative finding on that issue was not, however, essential to the jurisdiction of the Appellate Division.

*Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000), and *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001), hold that Section 16(a)(1)(B) confers appellate jurisdiction to review a denial of a petition for an order compelling arbitration that alleges a prima facie case of entitlement thereto under Section 4 of the FAA and, by analogy, indicate that Section 16(a)(1)(A) confers such jurisdiction to review the denial of a motion alleging prima facie entitlement to a stay under Section 3.[4]

In *Sandvik*, the appellee contended that the appeal fell "outside the FAA's interlocutory appeal provisions because the District Court[, although denying a petition for an order compelling arbitration under Section 4, had] not reached a final conclusion on the validity of the arbitration clause."  220 F.3d at 100.  We rejected this contention and exercised jurisdiction

---

[4]Like Section 3 of the FAA, Section 4 applies only where the parties have entered a written arbitration agreement. *See* 9 U.S.C. § 4 (providing in part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

10

over the appeal pursuant to Section 16(a)(1)(B). *Id.* at 102-04. In *DuPont*, the district court had denied the defendant's motion to compel arbitration based on its finding that the plaintiff, a non-signatory to the arbitration agreement, was not bound by the agreement under third-party beneficiary, agency, or equitable estoppel principles. 269 F.3d at 194. Citing *Sandvik* for support, we exercised jurisdiction over the appeal pursuant to Section 16(a)(1)(B) and affirmed the district court's ruling on the merits. *Id.* at 194, 194 n.3, 205.

Given the parallel objectives of Sections 3 and 4 of the FAA, we are confident that Section 16(a)(1)(A) confers appellate jurisdiction to review a denial of a motion for a stay pending arbitration which alleges a prima facie case of entitlement thereto under Section 3 of the FAA. As we have indicated, GSI has clearly alleged a prima facie case of entitlement, as an "affiliate" of TBVI under the Agreement, to a stay pending arbitration pursuant to Section 3. It follows that Section 16(a)(1)(A) conferred jurisdiction upon the Appellate Division to review the denial of a stay even though it made no determination as to whether there was an agreement in writing entitling GSI to arbitrate.

Having concluded that the Appellate Division properly exercised jurisdiction under Section 16(a)(1)(A), we now turn to our own jurisdiction. Strictly speaking, the Appellate Division's decision might be viewed not as "an order refusing a stay of an[] action under section 3," 9 U.S.C. § 16(a)(1)(A), but as an order *affirming* "an order refusing a stay of an[] action under section 3." As a substantive matter, however, the Appellate Division's order is identical in all material respects to

the Superior Court's order refusing a stay pending arbitration. On appeal to the Appellate Division, GSI sought the same ultimate relief (*i.e.*, a stay pending arbitration) as it did before the Superior Court. Likewise, the Appellate Division's order affirming the Superior Court's denial of GSI's motion for a stay pursuant to Section 3 had the same ultimate effect (*i.e.*, denial of a stay pending arbitration) as the Superior Court's order. Had the Appellate Division determined that the instant dispute was arbitrable, it would have reversed the Superior Court's decision and directed the Superior Court to enter an order staying the case pending arbitration. In our view, the procedural posture in which the Appellate Division's decision was rendered does not make it any less "an order refusing a stay" than the order of the Superior Court from which GSI appealed.

In an analogous situation, we have recognized as much in relying on Section 16(a)(1)(B) to exercise second-level appellate review of a bankruptcy court order denying a petition to compel arbitration. *See In re Mintze*, 434 F.3d 222, 227 (3d Cir. 2006) (citing § 16(a)(1)(B) as one basis for jurisdiction over district court's order affirming the bankruptcy's court denial of motion to compel arbitration); *see also MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) (exercising § 16(a)(1)(A) jurisdiction over "district court's order *denying arbitration*" where district court affirmed bankruptcy court's refusal to stay adversary proceeding pending arbitration) (emphasis added); *In re Gandy*, 299 F.3d 489, 493-94 (5th Cir. 2002) ("This court's appellate jurisdiction to review the bankruptcy court's refusal to stay an adversary proceeding pending arbitration is founded upon section 16(a)(1)(A) of the Federal Arbitration Act . . . ."); *In re Nat'l Gypsum Co.*, 118

F.3d 1056, 1061 (5th Cir. 1997) (same).

Moreover, only this construction of Section 16(a)(1)(A) will fulfill the proarbitration purposes of the statute. In no uncertain terms, Section 16 "makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not." *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 732 (3d Cir. 1989); *see* n.3, *supra*. By prohibiting interlocutory appeals of orders favoring arbitration, Section 16 "relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 270 (3d Cir. 2004). At the same time, the availability of interlocutory review under Section 16 of decisions favoring litigation avoids the possibility that a litigant seeking to invoke his arbitration rights will have to "endur[e] a full trial on the underlying controversy before [he] can receive a *definitive* ruling on whether [he] was legally obligated to participate in such a trial in the first instance." *Sandvik*, 220 F.3d at 104.

Were we to conclude that Section 16(a)(1)(A) does not permit us to exercise jurisdiction over an interlocutory appeal of a decision by the Appellate Division affirming a Superior Court's denial of a motion to stay pursuant to Section 3, a party wrongfully denied a stay would be forced to litigate the underlying dispute exhaustively before being able to secure

13

vindication of his right to avoid litigation.[5] Upon entry of a final judgment by the Superior Court, the litigant could seek appellate review of the entire case, including the Superior Court's order refusing to stay the proceedings pending arbitration. While the Appellate Division would likely be bound by its prior determination of the issue under the law of the case doctrine, nothing would preclude us from considering the merits of the Superior's Court order denying the stay. Were we to ultimately conclude that the motion to stay pending arbitration had been improperly denied, the final judgment of the Superior Court would be vacated and the case would be remanded to the Superior Court with directions to stay the proceedings pending arbitration.

Under this worst case scenario, vindication of the litigant's contractual right to arbitrate would come only after he had been forced to expend substantial time and expense fully litigating the matter in court, which is precisely what he sought to avoid in the first place by bargaining for the speedy and

---

[5]Other than under Section 16(a)(1)(A), there is no basis for exercising jurisdiction over an interlocutory appeal in these circumstances. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 52 (3d Cir. 2001) (order denying a stay of court proceedings pending arbitration "should not be regarded as appealable as an order denying an interlocutory injunction under [28 U.S.C. §] 1292(a)(1)"); *Queipo v. Prudential Bache Sec., Inc.*, 867 F.2d 721, 722 (1st Cir. 1989) (denial of stay pending arbitration is not appealable under the collateral order doctrine because such orders are "not effectively unreviewable on appeal from a final judgment").

efficient dispute resolution procedure that the arbitral forum offers. Even where, as here, the Superior Court and the Appellate Division have found that the appealing party waived its right to arbitrate by substantially litigating the dispute in court, we believe the FAA's strong policy favoring arbitration will still be best served, at least in cases where the appeal is not frivolous or forfeited, by allowing the party to obtain a definitive ruling on the denial of its Section 3 motion by way of interlocutory appeal to this Court, rather than requiring it to continue litigating the case to final judgment before obtaining a full round of appellate review on the waiver issue.

Exercising jurisdiction under Section 16(a)(1)(A) of the FAA, we will now consider the merits of GSI's appeal.[6] We

_____

[6]As noted above, we previously entered an order granting GSI's motion to stay the proceedings before the Superior Court pending our resolution of this appeal. There is a circuit split on the question of whether the filing of an interlocutory appeal pursuant to Section 16(a) of the FAA automatically deprives the trial court of jurisdiction to proceed until such time as the appeal is fully litigated or determined to be frivolous or forfeited. *Compare McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162-63 (10th Cir. 2005) (automatic divestiture of trial court jurisdiction unless appeal is frivolous or forfeited); *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) (automatic divestiture of trial court jurisdiction unless appeal is frivolous)*; Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (endorsing automatic divestiture rule, reasoning that "[c]ontinuation of proceedings in the district court largely

review the decision of the Superior Court using the same standard of review applied by the Appellate Division. *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004); *Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 347 n.3 (3d Cir. 2001); *Semper v. Santos*, 845 F.2d 1233, 1235-36 (3d Cir. 1988). We exercise plenary review of the Superior Court's denial of GSI's motion to stay proceedings pending arbitration, *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992), but only review the Superior Court's findings of fact for clear error. *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 53 (3d Cir. 2001).

### III.

Relying on the Supreme Court's recent pronouncements on the division of labor between courts and arbitrators in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (plurality opinion), GSI insists that the waiver defense raised by Ehleiter was within the exclusive province of an arbitrator to decide. GSI also argues that the arbitration provisions of the Agreement reserve resolution of waiver by litigation issues for the

defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals"), *with Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53-54 (2d Cir. 2004) (no automatic stay); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) (same). In our order granting GSI's motion to stay, we expressed our agreement with the majority rule of automatic divestiture where the Section 16(a) appeal is neither frivolous nor forfeited.

arbitrator.

## A.

In *Howsam*, the Supreme Court granted certiorari to resolve a disagreement among the Courts of Appeals over whether the application of a National Association of Securities Dealers ("NASD") rule imposing a time limit on submission of disputes for arbitration was a matter presumptively for the court or for the NASD arbitrator. 537 U.S. at 82-83. The Court acknowledged that "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise," *id.* at 83 (citations and internal alteration omitted), and framed the issue before it as "whether application of the NASD time limit provision falls into the scope of this . . . interpretive rule." *Id.*

The Court first examined the role of judges in resolving issues related to arbitration. The Court stated that "questions of arbitability," which are presumptively for the court to decide, are limited to gateway disputes that the "contracting parties would likely have expected a court to have decided . . . , where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing the parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84. The Court noted that disputes about "whether the parties are bound by a given arbitration clause," and disagreements over "whether an arbitration clause in a concededly binding contract applies to a particular type of

17

controversy" are two types of "question[s] of arbitrability" to be decided by the court. *Id.* at 84.

By contrast, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." *Id.* at 84 (citation and emphasis omitted). As an example, the Court cited *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), where it held that an arbitrator should decide whether the party seeking arbitration had properly completed a grievance procedure that served as a prerequisite to arbitration under the parties' agreement. *Id.* (citing *John Wiley*, 376 U.S. at 557). "So, too," the Court continued, "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The Court observed that these are the types of questions that parties would "likely expect" to be entrusted to an arbitrator for resolution. *Id.*

The Court summarized its analysis of the division of labor between judge and arbitrator by quoting Section 6 of Revised Uniform Arbitration Act of 2000 ("RUAA"),[7] and a comment thereto: "[an] arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled," and "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues

---

[7]The Court noted that the RUAA "incorporate[s] the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]." *Id.* at 84-85 (internal quotation marks omitted).

18

of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitration have been met, are for the arbitrators to decide." *Id.* at 85 (quoting RUAA § 6(c) & cmt. 2, 7 U.L.A. 12-13 (Supp. 2002) (emphasis in *Howsam*)).

The Court concluded that the applicability of the NASD time limit rule was an issue presumptively for the arbitrator, rather than the court, to decide because: (a) "[t]he time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability,'" *id.*, such as questions of "'waiver, delay, or a like defense,'" *id.* (quoting *Moses H. Cone*, 460 U.S. at 24-25), and "seems 'an aspect of the controversy which called the grievance procedures into play,'" *id.* (quoting *John Wiley*, 376 U.S. at 559) (internal alterations omitted); (b) "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it," and thus "it is reasonable to infer that the parties intended the agreement to reflect that understanding," *id.*; and (c) "for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better secure a fair and expeditious resolution of the underlying controversy - a goal of arbitration systems and judicial systems alike." *Id.*

Having determined that the NASD time limit rule was presumptively for the arbitrator to interpret and apply, the Court next rejected the appellee's contention that the language of the parties' agreement reflected their intent to have the issue resolved by the court prior to arbitration. The Court reiterated that "parties to an arbitration agreement would normally expect

a forum-based decisionmaker to decide forum-specific procedural gateway matters," and found that the agreement did not reflect a contrary intent of the parties. *Id.* at 86.

In *Green Tree*, the Court held that the question of whether the parties' agreement prohibited the use of class arbitration procedures was an issue for the arbitrator because "[i]t concerns contract interpretation and arbitration procedures," rather than "judicial procedures." 539 U.S. at 452-53. The Court reaffirmed the general division of labor articulated in *Howsam*, noting that the issues which relate to "what kind of arbitration proceeding the parties agreed to" are presumptively for the arbitrator to decide, while issues related to "whether they agreed to arbitrate a matter," are presumptively entrusted to the court for resolution. *Id.* at 452 (emphasis omitted).

## B.

We begin our analysis by observing that our Court has long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator, *see, e.g.*, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995); *Hoxworth*, 980 F.2d at 925-27; *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783-84 (3d Cir. 1975), as have our sister circuits. *See generally* 2 I.R. Macneil et al., *Federal Arbitration Law* § 21.3 (Supp. 1999). In the wake of *Howsam* and *Green Tree*, we have continued to resolve waiver claims based on litigation conduct, *see Palcko v.*

*Airborne Express, Inc.*, 372 F.3d 588, 596-98 (3d Cir. 2004), albeit without analysis, and the district courts in our Circuit appear to have unanimously followed suit. *See, e.g.*, *Yanes v. Minute Maid Co.*, No. Civ. A. 02-2712, 2006 WL 521541, at *2-*5 (D.N.J. March 2, 2006); *Expofrut S.A. v. M/V ACONCAGUA*, 280 F. Supp. 2d 374, 376-77 (E.D. Pa. 2003), *aff'd*, 110 Fed. Appx. 224 (3d Cir. Sept. 28, 2004) (unpublished). *But see Bellevue Drug Co. v. Advance PCS*, 333 F. Supp. 2d 318, 323-25 (E.D. Pa. 2004) (citing *Palcko* as authority for deciding question of waiver based on litigation conduct after *Howsam*, but expressing reservations).

Finding persuasive the First Circuit's analysis in *Marie v. Allied Home Mortgage*, 402 F.3d 1 (1st Cir. 2005), one of the few post-*Howsam*/*Green Tree* cases that has squarely addressed the issue before us, we conclude the Supreme Court did not intend its pronouncements in *Howsam* and *Green Tree* to upset the "traditional rule" that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court.

The precise question before the First Circuit in *Marie* was whether "waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court even after the *Howsam* and *Green Tree* holdings," 402 F.3d at 3, which the court answered in the affirmative.[8] The First

---

[8]In *Marie,* the district court found that the defendant had waived its right to arbitrate by, among other things, participating in the administrative proceedings underlying the parties' dispute. *Id.* at 11.

21

Circuit started its analysis by noting that, under the FAA, a court is only required to stay an action pending arbitration if "the applicant for the stay is not in *default* in proceeding with such arbitration," 9 U.S.C. § 3 (emphasis added), and observed that courts have generally interpreted the term "default" to mean "waiver" in this context, citing several cases in which courts determined that a party seeking arbitration had "waived" its entitlement to a stay under Section 3 by actively litigating the dispute in court. *Marie*, 402 F.3d at 13 (citing *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204-05 (4th Cir. 2004); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n.17 (11th Cir. 2002); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001); *County of Middlesex v. Gevyn Constr. Corp.*, 450 F.2d 53, 56 n.2 (1st Cir. 1971)). The court opined that the "default" language in Section 3 "would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." *Id.*

Recalling that the Supreme Court in *Howsam* had "relie[d] heavily" on a comment from Section 6 of the RUAA in its discussion of the division of labor between judges and arbitrators, the *Marie* court went on to observe that another comment within the same section of the RUAA provides that "[w]aiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause," *id.* (quoting RUAA § 6, cmt. 5, 7 U.L.A. 16 (Supp. 2004)), and cites cases involving waiver based on litigation conduct as support for this proposition. *See* RUAA § 6, cmt. 5, 7 U.L.A. 16 (Supp. 2004).

22

Turning finally to the "comparative expertise considerations" that informed the Supreme Court's resolution of the "who decides" question in *Howsam* and *Green Tree*, the *Marie* court observed that the trial judge, having been directly involved in the entire course of the legal proceedings, is better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop. *Id.* at 13. More fundamentally, because the inquiry into whether a party has waived its right to arbitrate by litigating the case in court "heavily implicates '*judicial* procedures,'" *id.* (quoting *Green Tree*, 539 U.S. at 452-53), *Marie* emphasized that the court should remain free to "control the course of proceedings before it and to correct abuses of those proceedings," rather than being required to defer to the findings an arbitrator with no previous involvement in the case. *Id.*; *see also* RUAA § 6 cmt. 5, 7 U.L.A. 16 (Supp. 2004) (observing that, as a matter of judicial economy, "a party . . . who pursues an action in a court proceeding but [then] later claims arbitrability . . . [should] be held to a decision of the court on waiver").

We find the First Circuit's thorough analysis convincing, and GSI fails to persuade us otherwise.[9]  Viewed in isolation,

_____

[9]To date, the First Circuit's analysis in *Marie* has been expressly adopted by at least one state supreme court, *see Ocwen Loan Servicing, LLC v. Washington*, 939 So.2d 6, 12-14 (Ala. 2006), as well as several federal district courts in other Circuits. *See, e.g.*, *Reidy v. Cyberonics, Inc.*, No. 1:06-CV-249, 2007 WL 496679, at *3-*4 (S.D. Ohio Feb. 8, 2007); *Vega v. Contract Cleaning Maintenance*, No. 03 C 9130, 2006 WL 1554383, at *5 (N.D. Ill. June 1, 2006).

the Supreme Court's statement in *Howsam* that "the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability,'" 537 U.S. at 84 (quoting *Moses H. Cone*, 460 U.S. at 25) (internal alteration omitted), certainly provides general support for GSI's position here.[10] Properly considered within the context of the entire

---

[10]As noted, the above-quoted passage from *Howsam* includes an excerpt from *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). In *Moses H. Cone,* the Supreme Court was called upon to decide whether the district court had erred in staying the action pending resolution of an ongoing state proceeding involving the same issue, viz., the arbitrability of the plaintiff's claims. The Court concluded that the district court abused its discretion in staying the case, relying in part on the fact that federal law (the FAA), rather than state law, governed the arbitrability issue. In the course of its discussion of the FAA, the Court commented that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or *an allegation of waiver, delay, or a like defense to arbitrability.*" *Id.* at 24-25 (emphasis added). In our view, *Moses H. Cone* established only that arbitrability defenses such as waiver should be "addressed with a healthy regard for the federal policy favoring arbitration," *id.* at 24, not that these defenses should presumptively be resolved by an arbitrator. In fact, in *Germany v. River Terminal Ry. Co.*, 477 F.2d 546 (6th Cir. 1973), one of the cases cited by *Moses H. Cone* as support for the proposition in question, the court resolved of a claim of waiver based on litigation conduct.

opinion, however, we believe it becomes clear that the Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in that case, and not to claims of waiver based on active litigation in court. As the Appellate Division recognized, this latter type of waiver implicates "courts' authority to control *judicial* procedures or to resolve issues . . . arising from *judicial conduct*," JA at 543, which we believe parties would expect the court to decide itself.

Contrary to GSI's suggestion, we do not find the Eighth Circuit's decision in *Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir. 2003) helpful here. *Transamerica* involved a dispute arising out of two separate reinsurance contracts between Transamerica and NAICO. After the dispute had been pending in arbitration before a panel of three arbitrators for over a year, one of the arbitrators assigned to the case resigned. Pursuant to Section 5 of the FAA, NAICO petitioned a federal district court for an order naming an arbitrator to fill the vacancy left by the resignation. *See* 9 U.S.C. § 5 (authorizing parties to arbitration proceedings to petition a court for designation and appointment of arbitrators in certain circumstances). Notwithstanding the parties' active participation in arbitration, Transamerica filed a

---

*See id.* at 547-48 (finding no waiver where party first raised arbitration in an amended pleading because the right to arbitrate may only be waived "by the actions of a party which are completely inconsistent with any reliance" on the arbitration agreement).

25

counterclaim asserting that NAICO had waived its right to arbitrate by, as described by the Eighth Circuit on appeal, "engag[ing] in arbitration with three other insurance companies in 1994 concerning four reinsurance contracts, two of which involved Transamerica and are the subject of the present dispute." *Id.* at 464; *see id.* at 463 ("Transamerica counterclaimed that NAICO had waived the right to arbitrate because the disputed contract was subject of a prior arbitration."); *id.* at 463-64 ("Transamerica argued before the district court that NAICO had waived the right to arbitrate because the 1990 reinsurance contracts were the subject of prior arbitration."). The district court appointed a new arbitrator pursuant to Section 5 and declined to rule on Transamerica's counterclaim, concluding that the issue of waiver should be decided by the arbitration panel.

The Eighth Circuit affirmed on appeal, addressing Transamerica's waiver argument in the following brief discussion:

> Finally, Transamerica contends that NAICO has waived the right to arbitrate because NAICO pursued litigation in the Oklahoma courts on reinsurance contracts to which Transamerica is a party. However, the United States Supreme Court has recently reiterated [in *Howsam*] that the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability. Therefore, once the panel is reconstituted with the arbitrator appointed by the district court, the issue of waiver may be

26

presented for the panel's consideration.

*Id.* at 466 (internal citation and alteration omitted).

We confess to some uncertainty about the nature of the waiver conduct at issue in *Transamerica*. Although the Eighth Circuit described Transamerica's waiver argument in this last passage as being based on NAICO's pursuit of "litigation in the Oklahoma courts," on three different occasions, as noted above, the court described Transamerica's waiver argument as being based exclusively on NAICO's participation in a prior arbitration proceeding involving the underlying dispute between the parties, which perhaps suggests that any prior court action brought by NAICO had been referred to, and resolved in, arbitration. To the extent that *Transamerica* may be understood as a case involving waiver by prior arbitration conduct, rather than by prior litigation conduct, the case is plainly distinguishable from ours on this basis.

To the extent that *Transamerica* may be fairly read as involving a claim of waiver based on litigation conduct, we believe the result reached by the Eighth Circuit can be explained by the rather unique procedural circumstances of that case. In a typical waiver case, such as the one before us, a party opposing arbitration urges the trial court to deny a motion made under Section 3 or Section 4 of the FAA on the ground that his opponent waived its right to arbitrate by actively participating in the underlying proceedings before that court. As noted above, considerations of comparative expertise and judicial economy, among others, dictate that a waiver defense raised in this context be decided by the court, rather than being referred

to an arbitrator with no prior involvement with the case.[11]

In *Transamerica*, by contrast, the district court was asked, in the course of considering a petition to appoint a new arbitrator to an arbitration panel that had been presiding over proceedings on the parties' underlying dispute for more than a year, to decide whether the petitioner had waived its right to arbitrate by previously litigating the same contractual dispute in a case brought before another court. In these circumstances, referring the waiver issue to an arbitration panel that already has intimate familiarity with the parties' underlying dispute would be preferable to having it decided by a trial judge with no prior involvement in the case. In short, whether viewed as a case involving a claim of waiver based on arbitration conduct or a claim of waiver based on litigation conduct, we believe the Eighth Circuit's decision in *Transamerica* does not support GSI's position here.

We now make explicit that which is implicit in our decision in *Palcko*; we hold that waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide in the wake of *Howsam* and *Green Tree*.

C.

We must still consider GSI's argument that the

---

[11]We note that the Eighth Circuit has continued to decide typical claims of waiver based on litigation conduct in cases since *Transamerica*. *See, e.g.*, *Kelly v. Golden*, 352 F.3d 344, 348-50 (8th Cir. 2003).

28

Agreement provides for resolution of the waiver defense raised here by an arbitrator, notwithstanding any presumption to the contrary.[12]  An issue that is presumptively for the court to decide will be referred to the arbitrator for determination only where the parties' arbitration agreement contains "clear and unmistakable evidence" of such an intent.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)) (alterations omitted).  The Agreement in this case fails to satisfy this onerous standard.[13]

GSI primarily relies on the following arbitration

---

[12]As noted above, the arbitration provision in the Agreement not only encompasses any claims Ehleiter has against his employer, TBVI, but also his claims against "affiliated companies" of TBVI.  Like the Superior Court and the Appellate Division, we will assume for purposes of this appeal that GSI is an affiliate of TBVI and was therefore entitled to avail itself of the arbitration provisions in the Agreement.

[13]We share the First Circuit's concern about the enforceability of arbitration agreements that expressly authorize the arbitrator to resolve claims of waiver based on litigation conduct.  *See Marie*, 402 F.3d at 14 n. 10 ("The 'default' language in Section 3 of the FAA, which as we noted includes waiver, perhaps gives courts a duty, which cannot be shifted by contract between the parties, to determine whether waiver has occurred.").  Because we are not confronted with such an agreement in this case, however, we do not resolve this question here.

provision in the Agreement:

### 17. **<u>MATTERS ARBITRABLE</u>**

All claims or matters arising out of or relating in any fashion to this Agreement, to the breach of this Agreement, or to Employee's dealings with Employer, Employee's employment or the suspension or termination of Employee's employment with Employer shall be considered arbitrable. *Arbitrable matters include, but are not limited to*, the following: claims for wrongful or retaliatory discharge or wrongful treatment under Virgin Islands or Federal law, including, but not limited to, the Civil Rights Acts of 1866, 1871, 1964, and 1992, Title VII, the Equal Employment Opportunity Act, the Equal Pay Act, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and Titles 10 and 24 of the Virgin Islands Code; claims for employment discrimination under Virgin Islands law or Federal law; defamation, infliction of emotional distress, and all other matters sounding in tort; claims relating to Employee benefits; and *the issue of arbitrability of any claim or dispute*.

JA at 202-03 (emphasis added).

While it is clear from this provision that the parties

30

intended to have an arbitrator determine the gateway question of whether the underlying substantive dispute between them is arbitrable, whether it be a Title VII claim, a common law tort action, or any other legal claim for relief, we do not believe that this provision similarly evinces a clear and unmistakable intent to have an arbitrator decide procedural questions of arbitrability that arise only after the parties have bypassed a gateway determination of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court. There are no references to waiver of arbitration in this or any other provision of the Agreement. We cannot interpret the Agreement's silence regarding who decides the waiver issue here "as giving the arbitrators that power, for doing so . . . [would] force [an] unwilling part[y] to arbitrate a matter [he] reasonably would have thought a judge, not an arbitrator, would decide." *First Options*, 514 U.S. at 945. Litigants would expect the court, not an arbitrator, to decide the question of waiver based on litigation conduct, and the Agreement here does not manifest a contrary intent.

## IV.

Finally, GSI argues that, even if the Superior Court had authority to resolve the waiver issue, it erred in finding that GSI had waived any right it may have had to arbitrate Ehleiter's claim.[14]

---

[14]As noted above, we assume for purposes of this appeal that GSI is an affiliate of TBVI and was therefore entitled to avail itself of the arbitration provisions in the Agreement. Because it is otherwise undisputed that Ehleiter's claims against GSI are

31

In *Hoxworth*, we observed that "prejudice is the touchstone for determining whether the right to arbitrate has been waived" by litigation conduct. 980 F.2d at 925. After surveying the case law of our court and other circuits, we compiled a nonexclusive list of factors relevant to the prejudice inquiry: "[1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration [or to stay court proceedings pending arbitration] has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the [trial] court's pretrial orders; and [6] the extent to which both parties have engaged in discovery." *Id.* at 926-27 (internal citations omitted).[15] Under the *Hoxworth*

_____

arbitrable under the Agreement, the only remaining question before us is whether GSI has waived its right to arbitrate.

[15]In *Hoxworth*, we found that the defendants waived their right to arbitration based on the following litigation conduct: (a) participating in numerous pretrial proceedings during the more than eleven months before moving to compel arbitration; (b) filing a motion to dismiss the complaint for failure to state a claim and a motion to disqualify plaintiffs' counsel; (c) taking the deposition of each of the named plaintiffs, depositions that would not have been available in arbitration; (d) taking a deposition which prompted plaintiffs to file a motion to protect their right to depose that deponent in the future; (e) submitting inadequate responses to plaintiffs' discovery requests, which prompted the plaintiffs to file two motions to compel, which the

32

test, "[w]aiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Faragalli*, 61 F.3d at 1068-69 (quoting *Gavlik.*, 526 F.2d at 783). Although waiver "is not to be lightly inferred," *Great Western*, 110 F.3d at 233 (citing *Faragalli*, 61 F.3d at 1068), we will "not hesitate[] to hold that the right to arbitrate has been waived" where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration. *Hoxworth*, 980 F.2d at 926.

Each of the *Hoxworth* factors strongly weigh in favor of a finding of waiver in this case. Although delay alone does not constitute sufficient prejudice to support waiver, we first observe that GSI's delay of nearly four years before invoking its right to arbitrate far exceeds the eleven month time lapse at issue in *Hoxworth*, and dwarfs the delay involved in cases where we have found no waiver. *See Palcko*, 372 F.3d at 598 (38 days); *Wood,* 207 F.3d at 680 (1 ½ months)*; Faragalli*, 61 F.3d at 1069 (two months); *Gavlik*, 526 F.2d at 783-84 (defendant moved for stay pending arbitration "immediately" after removing the action to federal court); *accord Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 61 (1st Cir. 2003) (while "[t]here are no per se rules as to the length of delay necessary to

---

defendants opposed; (f) filing of a motion to stay discovery; (g) consenting to the district court's first pretrial order; and (h) filing of a lengthy memorandum in opposition to plaintiffs' motion for class certification. *Id.* at 925-26. "Only . . . after defendants' motion to dismiss the complaint was denied and plaintiffs' motion to compel discovery was granted, did [one of the defendants] file its motion to compel arbitration." *Id.* at 926.

33

amount to waiver, . . . . the four years' delay . . . , encompassing a period of active . . . litigation, greatly exceeds that found acceptable in this circuit").

During the intervening four-year period, the parties engaged in extensive discovery, with both sides exchanging several sets of interrogatories, requests for production of documents, and expert witness reports, as well as participating in the depositions of numerous witnesses. After the parties were unable to resolve the case in mediation, GSI filed a motion for summary judgment, requiring Ehleiter to defend his claims on the merits and inviting final resolution of the case in a judicial forum. GSI engaged in substantial non-merits motion practice as well, including filing a motion to implead a third party defendant.

GSI scrupulously assented to the trial court's procedural orders. At the court's request, GSI and Ehleiter submitted a joint stipulation certifying their readiness for trial by a certain date. When the court later scheduled the case for trial, GSI promptly sought a continuance and proposed new trial dates, yet again reaffirming its amenability to judicial resolution of the parties' dispute.

Courts have not hesitated to find waiver under similar (and arguably less egregious) circumstances. *See, e.g.*, *Restoration Pres.*, 325 F.3d at 61-62 (waiver where, over four-year period, parties were involved in numerous depositions and pretrial conferences and trial was less than two months away); *Com-Tech Assocs. v. Computer Assocs. Int'l , Inc.*, 938 F.2d 1574, 1576-78 (2d Cir. 1991) (waiver where defendant actively

34

participated in discovery and filed dispositive motions over course of eighteen months and trial was only three months away); *S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (waiver where defendant delayed eight months, engaging in merits and non-merits motion practice and taking several depositions in the interim).

GSI insists that the circumstances of this case do not compel a finding of waiver under *Hoxworth* because Ehleiter has failed to demonstrate that his legal position has been actually prejudiced by GSI's delay in invoking its arbitration rights. GSI notes that, in contrast to *Hoxworth*, where the defendants had taken "the deposition of each of the named plaintiffs, depositions that would not have been available in arbitration" and "inadequately answered plaintiffs' discovery requests, prompting plaintiffs to file two motions to compel," *Hoxworth*, 980 F.2d at 925, Ehleiter has not suggested that GSI took advantage of discovery procedures only available in the trial court while thwarting his own efforts to obtain discoverable information. In further contrast to *Hoxworth*, GSI stresses that it did not wait for a ruling on the merits of Ehleiter's claims before seeking arbitration, but instead specifically asked the Superior Court to resolve its motion to stay before addressing its pending summary judgment motion.

In *Hoxworth*, we observed the plaintiffs in that case had "characterized the prejudice they suffered from defendants' failure to raise arbitration promptly as twofold: plaintiffs devoted substantial amounts of time, effort, and money in prosecuting the action, while defendants were able to use the Federal Rules to conduct discovery not available in the

35

arbitration forum." *Id.* at 926. While our waiver determination in *Hoxworth* was supported by evidence of both substantive prejudice and prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate, we did not suggest that a party claiming waiver must demonstrate the presence of both types of prejudice to prevail. To the contrary, we recognized that "'where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing . . . arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced,'" *id.* (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)), because under these circumstances we can readily infer that the party claiming waiver has already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, to at least some degree, if the case were now to proceed in the arbitral forum. Prejudice of this sort is not mitigated by the absence of substantive prejudice to the legal position of the party claiming waiver.[16]

---

[16]Ehleiter's attorney submitted an affidavit in the Superior Court stating that "over $40,000 has been expended by the plaintiff in the prosecution of this case." JA at 244. Although GSI challenges counsel's statement as "uncorroborated," in view of the extensive discovery and motion practice engaged in by the parties, there is no question that Ehleiter spent substantial amounts of time, effort, and money, whatever the precise amount, litigating this action before GSI filed its motion to stay. *See Restoration Preserv.*, 325 F.3d at 61 (noting that

GSI also contends that Ehleiter was not prejudiced by the extensive discovery that took place prior to the filing of GSI's motion to stay because much of the same discovery was conducted in a District Court case brought by Ehleiter against other defendants who did not have an agreement to arbitrate with Ehleiter. In support of this assertion, GSI simply points us to a docket sheet from that District Court action. Although the docket sheet reveals that Ehleiter and the defendants in the District Court action engaged in various forms of discovery, it is impossible for us to discern from this document the extent to which the discovery in that case overlapped with the discovery in the Superior Court action. Without further substantiation, GSI's argument does not undercut a finding of prejudice in this case.

Even were we to assume that some of the same discovery would have taken place in the District Court litigation had GSI promptly invoked its right to arbitration in the Superior Court action, a finding of prejudice would still be warranted on the record before us. The fact remains that GSI put Ehleiter to the expense of having to engage in at least "some case-specific written and deposition discovery" in the Superior Court action, as GSI itself concedes, JA at 311, and all the other *Hoxworth* factors strongly support a finding of prejudice here.

In short, *Hoxworth* compels a finding of waiver under these circumstances. *See Hoxworth*, 980 F.2d at 925-27; *see also Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d

"[p]rejudice to the plaintiffs is easily inferred from the necessary expenditures" over a four-year period of active litigation).

37

Cir. 1997) ("The 'prejudice' that supports a finding of waiver can be 'substantive' prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or obtains information through discovery procedures not available in arbitration. *Additionally, . . . a party may be prejudiced by the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate.*") (internal citations omitted) (emphasis added).[17]

## V.

For the foregoing reasons, we will affirm the judgment of the Appellate Division.

---

[17]We have considered all of GSI's remaining arguments and conclude that no further discussion is necessary.

38